JEFFREY M. HAMERLING (Bar No. 91532)
ERIN FRAZOR (Bar No. 251324)
DLA PIPER US LLP
153 Townsend Street, Suite 800
San Francisco, CA 94107-1957
Tel: 415.836.2500
Fax: 415.836.2501

Attorneys for Defendant
FASTSIGNS INTERNATIONAL, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

NORMAN GILBERT,

    Plaintiff,

v.

FASTSIGNS INTERNATIONAL, INC. and DOES 1-20, inclusive,

    Defendants.

Case No. CV 08-03043 VRW

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Date: July 10, 2008
Time: 2:30
Judge: Hon. Vaughn R. Walker

FASTSIGNS INTERNATIONAL, INC. ("FII") respectfully submits the following opposition to the motion for remand filed by Plaintiff Norman Gilbert ("Gilbert").

## I. INTRODUCTION

This matter involves the termination of Mid-Peninsula Marquee, Inc.'s ("Mid-Peninsula's") Franchise Agreement with FII, which Gilbert executed in 2001 and subsequently transferred to Mid-Peninsula, a corporation of which he is President. FII terminated Gilbert's franchise because Gilbert purposely hid a significant sale from FII and then refused to pay the full amount of royalty payments and audit fees. After FII exercised certain contractual rights to discontinue electronic services provided to Gilbert, Gilbert filed a complaint in Superior Court in San Mateo County, California, obtained a temporary restraining order and sought preliminary

1  injunctive and declaratory relief. FII removed the action to this court based on diversity
2  jurisdiction.
3        Gilbert argues that because his complaint does not presently include a prayer for
4  damages, the amount in controversy does not exceed $75,000. Gilbert's argument flies in the
5  face of the settled rule that in action seeking an injunction, the value of the injunction to the
6  plaintiff is one measurement of the amount in controversy. Gilbert claims that the amount in
7  controversy requirement is not met, despite the fact that his request for injunctive relief is replete
8  with allegations that without an injunction pending arbitration of this action, he will face the
9  forfeiture of his business. As stated in the accompanying declaration of Larry Lane in support of
10 this memorandum, FII has ample evidence that Gilbert's franchise – the business he is seeking to
11 preserve - is more likely than not worth considerably more than $75,000. In fact, based upon
12 Gilbert's current sales, it appears that Gilbert contends that he will lose sales in the amount of
13 $75,000 in less than three (3) months.
14       Gilbert cannot ask for an injunction based on alleged dire consequences and at the same
15 time contend that the dispute in controversy is not in excess of $75,000.
16       FII does not believe that Gilbert will suffer irreparable harm or that his business will be
17 "forfeited" without the preliminary injunction. FII will demonstrate at the appropriate
18 preliminary injunction hearing that Gilbert has neither shown the requisite harm nor the
19 probability of success for issuance of a preliminary injunction. However, for purposes of this
20 motion for remand, FII is entitled, and the court is required, to assume the truth of plaintiff's
21 allegations on their face to show that the requisite jurisdictional amount is in dispute.[1] And
22 Gilbert's allegations demonstrate that this is the case.

---

[1] *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe) (citations omitted); *Helm v. Alderwoods Group, Inc.*, 2008 WL 2002511, at *4 (N.D. Cal. May 7, 2008) ("The court must assume the truth of the allegations in the complaint and that a jury will return a verdict for the plaintiff on all claims alleged").

WEST\21459862.6               -2-

OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND –CASE NO. CV 08-03043 VRW

## II. STATEMENT OF FACTS

### A. The Parties' Relationship And Attempted Termination, And The Commencement And Removal Of This Litigation.

On or about November 12, 2001, FII and Gilbert entered into a Franchise Agreement providing Gilbert the right to operate a FASTSIGNS sign, graphics, and banner store under the FII trademark, service mark, and trade name in Redwood City, California. (Declaration of Larry Lane in Opposition to Plaintiff's Motion to Remand ("Lane Decl."), ¶3). The franchise was transferred to Mid-Peninsula Marquee, Inc., a California corporation that Gilbert formed to operate the franchise business. (*Id.*) (For purposes herein, Gilbert and Mid-Peninsula collectively will be referred to as "Gilbert").

On or about May 27, 2008, FII notified Gilbert of the termination of the Franchise Agreement pursuant to the default and termination provisions of his Franchise Agreement, effective June 9, 2008, because Gilbert admittedly did not report a significant sale of over $160,000 to avoid royalty payments and then failed to pay the full amount of royalties and audit fees owed. (Id., ¶5 -7.) Thereafter, as of the June 9 date of termination, after certain negotiations concerning the termination date failed, FII discontinued Gilbert's access to e-mail, and FII's intranet and website communications, as permitted by the party's agreement in such circumstances. (*Id.*, ¶ 8). ¶

On June 11, 2008, Gilbert filed a complaint in Superior Court in San Mateo County, and obtained on an ex-parte basis a temporary restraining requiring FII to restore access to the electronic services pending arbitration of his dispute with FII which would also prohibit FII from interfering with Gilbert's use and enjoyment of the business. (*See* Declaration of Gregory M. Gentile in Support of Plaintiff's Motion to Remand ("Gentile Decl.") and Complaint for Injunctive and Declaratory Relief, attached as Exhibit C, thereto ("Complaint")). FII timely filed its petition to remove the action based on diversity of citizenship on June 20, 2008. (*See* Notice of Removal attached to Gentile Decl. as Exhibit D.)

FII does not contest Gilbert's demand for arbitration, but is exercising its right to have this preliminary injunction dispute determined in this forum. (Lane Decl., ¶ 14.)

WEST\21459862.6                                   -3-

OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND –CASE NO. CV 08-03043 VRW

**B.     Allegations Of Gilbert's Pleadings Regarding The Amount In Controversy.**

Gilbert's Complaint does not allege a specific amount of damages, although it does allege that Gilbert has suffered damages and will pray leave to amend the Complaint to allege an exact amount of damages if this becomes necessary. (Complaint, ¶ 16.) However, the primary relief sought is injunctive and declaratory relief. The Complaint contains the following allegations concerning Gilbert's injuries:

> Defendant's acts are restricting GILBERT from performing any business activities and is economically injuring him and his customer base to his detriment. Plaintiff has no speedy or adequate remedy at law for the on-going injuries being suffered … and GILBERT is suffering the loss of its present business and future business and enjoyment of its business property as a result of Defendant's actions.

(Complaint, ¶ 14.)

> Defendant's activities are forcing GIBERT to forfeit all of his attendant business property rights.

(Complaint ¶ 19.)

Gilbert's memorandum of points and authorities in support of his application for a temporary restraining order and order to show cause re preliminary injunction ("Gilbert's MPA re Injunction") amplified on these assertions with the following statements:

> Clearly, the disappearance[2] of the web-site cannot be discounted as having a devastating effect of business [sic] since this loss will confuse customers and damage the prospects for continued viability and reliability to meet their sign and graphic needs.

(Exhibit A to Declaration of Erin Frazor in Opposition to Motion to Remand ("Frazor Decl."), p.2, line 24-27, and Frazor Decl. ¶ 2.)

> It would be inimical to GILBERT if he were not allowed to operate the franchise until the dispute is resolved <u>since it will result in forfeiture and dilution of his business interest</u> and his efforts for the past five years.

(*Id.*, p. 5, lines 27 – p.28, line 1.) (emphasis added.)

> The action taken by Defendant is … crippling his business.

---

[2]    Exhibit B to Declaration of Gregory M. Gentile in Support of Plaintiff's Motion to Shorten Time/and or Specially Set for Hearing Plaintiff's OSC for Preliminary Injunction ("Gentile Injunction Declaration") (Court Docket # 6), p. 16 of 48, p. 2, line 24-27.

WEST\21459862.6                          -4-

OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND –CASE NO. CV 08-03043 VRW

(*Id.*, p. 7, lines 24-25.) ¶

> "Further FASTSIGNS' actions is [sic] having a detrimental effect on employees who are now aware of the issues taking place between the parties and are fearful of losing their jobs, with the denial of electronic services causing them to lose faith in the management of the business."

(*Id.*, p.6, lines 13-15.)

Gilbert's Declaration in Support of Plaintiff's application for a temporary restraining order and order to show cause re preliminary injunction ("Gilbert's Declaration re Injunction") contained similar assertions:

> My business is being irreparably economically harmed by the denial of all electronic services and franchisee support by FASTSIGNS....
>
> "Being cut off from e-mail, not being able to send or respond to e-mail and having no web site presence whatsoever will cause the business to lose a significant amount of daily sales as well as the loss of customer goodwill."

(Gentile Injunction Decl., ¶¶ 15-16.)

### C. Facts Relating To The Valuation Of Gilbert's Franchise.

The following facts relate to the value of FII's franchise and Gilbert's sales.

1. From 1999 through 2008, nineteen franchisees under Franchise Agreements with FII located in California sold their franchises. (Lane Decl., ¶10 and Exhibit B, thereto). Of these franchises, all but three sold for $75,000 or more. (*Id.*) The three franchises whose prices were lower than $75,000 were all sold at distress sales and had a history of sales in the twelve month period preceding the sale of less than $250,000. (*Id.*) One store, with sales of $161,000 in the twelve month period preceding its sale, sold for $75,000. (*Id.*)

2. From 1999 to 2008, all stores located in California with annual sales of $250,000 or more during the twelve month period preceding the sale of the franchise sold for at least $150,000. (*Id.*,¶ 11, and Exhibit B thereto.)

3. Gilbert's reported sales in the period from January 1, 2007 to December 31, 2007 were $637,266.32. (*Id.*, ¶ 12, and Exhibit C thereto). Gilbert's reported sales in the period January 1, 2008 to June 30, 2008 were $526,325.77 (*Id.*) These sales included a sale for

$166,254 that was made in 2007 and which Gilbert belatedly reported in May 2008. (*Id.*) Hence, Gilbert's sales are in excess of $75,000 per quarter.

4. Based on Gilbert's sales experience over the twelve months preceding this hearing, even if Gilbert sold his franchise for 27% of the his total sales in the twelve month period preceding July 1, 2008, which is by far the lowest percentage which occurred with respect to a California sale in the period from 1999 to 2008, the franchise's value on the open market would more likely than not be in excess of $150,000. (*Id.*, ¶ 13). This would still be the case if the full $166,254 were subtracted from the sales for this period on the theory that the sale or a portion thereof may have occurred prior to July 1, 2007. (*Id.*)

## III. ARGUMENT

### D. Remand Is Unwarranted Because FII's Evidence Shows that It is More Likely than Not That the Amount in Controversy Exceeds $75,000

#### 1. Legal Standards.

Gilbert is of course correct that removal is only appropriate when the amount in controversy exceeds $75,000. (28 U.S.C.A.§ 1332). However, Gilbert's claim that because he has not alleged any specific amount of monetary damages, this criterion is not met is unequivocally incorrect. Where, as here, plaintiffs have not specified the amount of damages in their complaint, a defendant may demonstrate by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). Defendant must produce evidence that it is "more likely than not" that the amount in controversy exceeds that amount. *Id.*; *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

When the amount in controversy is not facially apparent from the complaint, the court may consider facts in the removal petition and may require the parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal. *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). Even when the notice of removal contains insufficient factual allegations to demonstrate the amount in controversy, it is proper to consider evidence

presented at a remand hearing as an amendment to the notice of removal. *See Cohn v. Petsmart, Inc.* 281 F.3d 837, 840 (9th Cir. 2002) (where defendant's notice of removal summarily alleged amount in controversy, district court did not err in considering opposition to remand petition as an amendment to its notice of removal, quoting *Willingham v. Morgan*, 395 U.S. 402, 407, n.3 (1969) "it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavit"); *Alexander v. Fed Ex Ground Package System, Inc.*, 2005 WL 701601 at *3 (N.D. Cal. March 25, 2005) (construing defendant's opposition as an amendment to its notice of removal and denying motion to remand); *General Dentistry for Kids, LLC v. Kool Smiles*, 2008 WL 1937316 (D. Ariz. April 28, 2008) (same); *Moore v. Genesco, Inc.*, 2006 WL 2691390 at *2 (N.D. Cal. Sept. 20, 2006) (granting motion to remand on facts but stating "as a preliminary matter" that a district court may treat an opposition brief as an amendment to the notice of removal).

In an action seeking an injunction, the jurisdictional requirement is satisfied "if either party can gain or lose the jurisdictional amount" from the granting or denial of the requested relief." *Sanchez v. Monumental Life Insurance Co.*, 102 F.3d 398, 405 (9th Cir. 1996); *Ridder Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) (holding that for purposes of calculating amount in controversy in single plaintiff injunction action, "[t]he value of the thing sought be accomplished by the action may relate to either or any party to the action"). The test for determining whether the jurisdictional amount in controversy is met in a declaratory relief action, is the same as for an injunction action. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 346 (1977).

E.   **Gilbert's Pleadings And The Evidence Presented By FII In Opposition To Remand Shows That It Is More Likely Than Not That The Amount In Controversy Far Exceeds The Jurisdictional Threshold**

1.   **Because Gilbert Is Seeking To Save His Business From Destruction, An Appropriate Measure Is The Value of Gilbert's Franchise.**

Gilbert's complaint, motion for temporary injunction filed in the San Mateo Superior Court and accompanying declarations collectively assert that a preliminary injunction is required in this case to avoid the irreparable injury alleged therein. The clear import of the following

WEST\21459862.6

-7-

statements and the remaining statements regarded Gilbert's injury quoted in the Factual Statement of this memorandum is that Gilbert's action seeks to prevent the destruction of his business:

> "Defendant's activities are forcing GIBERT to forfeit all of his attendant business property rights."
>
> (Complaint ¶ 19).
>
> "It would be inimical to Gilbert if he were not allowed to operate the franchise until the dispute is resolved <u>since it will result in forfeiture and dilution of his business interest</u> and his efforts for the past five years."
>
> (Plaintiff's MPA in Support of Injunction at p. 5, line 27 – p.28 line 1) (emphasis added.)
>
> ". . . GILBERT is suffering the loss of its present business and future business and enjoyment of his business property as a result of Defendant's actions."
>
> (Complaint, ¶ 14).

As the lawsuit was filed to protect Gilbert from forfeiting his business rights, the "object of this litigation" is to protect the value of Gilbert's franchise pending the arbitration hearing. In cases seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation. *Hunt, supra*, 432 U.S. at 347 (1977); *Cohn v. Petsmart, supra*, 281 F.3d at 840 (holding that in action seeking injunction to protect against trademark infringement, the amount in controversy was met, because the value of the object of the litigation – plaintiff's trademark rights - exceeded $75,000).

  **2. The Evidence Presented by FII Compels The Conclusion that The Amount Allegedly In Controversy Is More than $75,000.**

FII has presented the following evidence that the amount in controversy is in excess of $75,000.

  1. The value of Gilbert's franchise is worth more than $75,000 based on the sales of other FII franchises in California. (Lane Decl., ¶10, and Exhibit B, thereto). (From 1999 to 2008, all stores located in California with annual sales of $250,000 or more during the twelve-month period preceding the sale sold for at least $150,000. (*Id.*, ¶11, and Exhibit B thereto.))

  2. Gilbert's reported sales for the period from January 1, 2007 to December 31, 2007 were $637, 266.32. (*Id.*, ¶ 12, and Exhibit C thereto). Gilbert's reported sales from the

period from January 1, 2008 to June 30, 2008 were $526,325.77, including the 2007 sale in the amount of $166,254 which was belatedly reported in May 2008. (*Id.*) Hence, Gilbert has sales in excess of $75,000 per quarter (*Id.*)

4. Based on Gilbert's sales experience for the last twelve months, even if Gilbert sold his franchise for 27% of his total sales in the twelve month period preceding July 1, 2008, which is by far the lowest percentage which occurred with respect to a California sale in the period from 1999 to 2008, and even if the $166,254 sale were excluded from the calculation of sales over the 12-month period, the value of franchise on the open market would more likely than not be in excess of $150,000. (*Id.*, ¶ 13.)

The foregoing evidence compels the conclusion that it is "more likely than not" that the amount in controversy requirements of 28 U.S.C. Section 1332 have been met by Gilbert's request for injunctive relief alone, without considering any claims for damages that Gilbert might possibly allege if it considers it necessary to amend its complaint.

**F.   Gilbert's Claim That "Forum Shopping Defeats FII's Notice Of Removal And Request For Attorneys' Fees Should Be Rejected**

Gilbert argues that FII is "forum shopping" but presents no authority that this alleged fact if true would defeat FII's removal. If the requirements for diversity jurisdiction are met, as FII vigorously contends, then the obligation to exercise jurisdiction is "virtually unflagging". In *First State Ins. Co. v. Callan Associates, Inc.,* 113 F.3d 161 (9th Cir. 1997) the court explained:

> Although occasionally stigmatized as a form of 'forum shopping,' the desire for a federal forum is assured by the constitutional provision for diversity jurisdiction and the congressional statute implementing Article III. In the proper case… the obligation to exercise jurisdiction is virtually unflagging.

*See also Williams v. Costco Wholesale Corp.,* 471 F.3d 975, 977 (9th Cir. 2006) ("With rare exceptions not applicable here, where the district court is presented with a case within its original jurisdiction, it has a 'virtually unflagging obligation to exercise the jurisdiction conferred upon [it] by the coordinate branches of government and duly invoked by litigants.") Gilbert has cited no authorities holding that alleged forum shopping by a diverse party in litigation in an action meeting the amount in controversy requirement alters this "unflagging" obligation. Accordingly,

1 | as FII has satisfied its burden concerning the amount in controversy, remand should be denied.

2 | Equally unavailing is Gilbert's assertion that the court has inherent authority to remand a case to enforce a forum selection agreement. (Gilbert Memorandum of Points of Authorities In Support of Motion to Remand, p. 4, line 5-7). This action does not include an action to enforce a forum selection clause. Indeed, FII does not contest Gilbert's right to arbitrate the underlying dispute but merely seeks to have Gilbert's motion for preliminary injunction held in this court.

Finally, even if this court finds that FII has somehow failed to meet its burden to establish the existence of an amount in controversy of $75,000 or more, the summary-judgment- type evidence presented with this opposition clearly shows that FII has an objectively reasonable basis for removal and cost and attorney fees should not be awarded. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 137 (2005) ("[A]bsent unusual circumstances, attorneys fees should not be awarded under §1447(c) when the removing party has an objectively reasonable basis for removal.")

### IV.  CONCLUSION

For the foregoing reasons, FII respectfully requests that this Court deny Gilbert's motion for remand.

Dated: July 7, 2008                             DLA PIPER US LLP


                                                By  /s/
                                                Jeffrey M. Hamerling
                                                Erin Frazor
                                                Attorneys for Defendant
                                                FASTSIGNS INTERNATIONAL, INC.