JEFFREY M. HAMERLING (Bar No. 91532)
ERIN FRAZOR (Bar No. 251324)
DLA PIPER US LLP
153 Townsend Street, Suite 800
San Francisco, CA 94107-1957
Tel: 415.836.2500
Fax: 415.836.2501

Attorneys for Defendant
FASTSIGNS INTERNATIONAL, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NORMAN GILBERT,<br><br>    Plaintiff,<br><br>    v.<br><br>FASTSIGNS INTERNATIONAL, INC. and DOES 1-20, inclusive,<br><br>    Defendants. | Case No. CV 08-03043 VRW<br><br>**DECLARATION OF LARRY LANE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date: July 10, 2008<br>Time: 2:30<br>Judge: Hon. Vaughn R. Walker |

I, Larry Lane, declare as follows:

1. I am the President of FASTSIGNS INTERNATIONAL, INC. ("FII"), a Texas corporation that specializes in the production and marketing of signs, graphics, banners, ready-to-apply lettering, trade show displays, and other complementary products and services, with an emphasis on convenience and one-day service. Under its franchise agreements, FII grants to franchisees the right to develop and operate a FASTSIGNS center and to use its marks in connection therewith.

2. I make this declaration in opposition to the motion for remand filed by plaintiff. I make the declaration based on my review of my files and documents, as well as my personal knowledge of the facts set forth in this declaration. If called upon to do so, I could and would competently testify to these matters.

3.    On or about November 12, 2001, FII and Norman Gilbert ("Gilbert") entered into a Franchise Agreement providing Gilbert the right to operate a FASTSIGNS sign, graphics, and banner store under the FII trademark, service mark, and trade name in Redwood City, California. The franchise was transferred to Mid-Peninsula Marquee, Inc., a California corporation that Gilbert formed to operate the franchise business.

4.    On May 1, 2008, I had a telephone conversation with Gilbert during which he acknowledged not reporting a significant sale to a customer and payment of royalties, and that the only "mistake" he made was depositing the money in his store bank account that caused him to be caught.

5.    On or about May 2, 2008, FII demanded payment of the royalties and audit expenses related to the unreported sale. FII subsequently accepted Gilbert's explanation for some of the audit discrepancies except for an underreported sale of $166,254, which Gilbert admitted.

6.    Gilbert thereafter failed to comply with FII's requirements for resolving this issue by failing to pay the amounts he owed to FII for the royalty and audit fees under the Franchise Agreement. Even as of this date, he has refused to pay the full amounts owed.

7.    On or about May 27, 2008, FII provided Gilbert a notice of termination of the Franchise Agreement pursuant to the default and termination provisions effective June 9, 2008. A true and correct copy of the notice of termination is attached hereto as Exhibit A.

8.    As of the June 9 date of termination, FII discontinued Gilbert's access to e-mail, and FII's intranet and website communications after Gilbert refused FII's offer to extend the termination date to allow him to sell his business. Subsequently, FII agreed to forward store e-mails for a limited time to Gilbert's personal e-mail address, although it had no obligation to do so.

9.    FII electronically keeps track of information concerning historical resale prices of franchises sold by its franchisees, and concerning the relationship of such resale prices to the selling franchisees' historical sales history. Attached hereto as Exhibit B is a true and correct copy of a spreadsheet developed from this electronic data which presents accurate information concerning resales of California franchises from 1999 to the present. Among other information

shown on the attached spreadsheet is the percentage relationship of the resale price of the franchise to the gross sales made by the franchisee in the twelve-month period preceding the sale of the franchise.

10. From 1999 through 2008, nineteen franchisees under Franchise Agreements with FII located in California sold their franchises. Of these franchises, all but four sold for more than $75,000. One franchise sold for $75,000. The three franchises whose prices were less than $75,000 were all sold at distress sales and had a history of sales in the twelve month period preceding the sale of the franchise of less than $250,000. The store that sold for $75,000 had sales in the immediately preceding twelve months of $161,000.

11. From 1999 to 2008, all stores located in California with annual sales of $250,000 or more during the twelve month period preceding the sale sold for at least $150,000.

12. Attached hereto as Exhibit C are true copies of two accounts receivable reports showing the monthly sales by Gilbert for the periods January 1, 2007 to December 31, 2007, and January 1, 2008 to June 30, 2008, respectively. Gilbert's reported sales for the period from January 1, 2007 to December 31, 2007 were $637,266.32. Reported sales for 2008 were $526,325.77. The report of sales for May 2008 included one sale for $ 166, 254, which occurred in 2007 but was belatedly reported in May 2008. Certain information not relevant to this motion has been redacted from the attached copies.

13. Based on Gilbert's sales experience for the last twelve months, even if Gilbert sold his franchise for 27% of the his total sales in the twelve month period preceding July 1, 2008, which is by far the lowest percentage which occurred with respect to a California sale in the period from 1999 to 2008, and even if the full $166,254 were subtracted from the 2008 sales proceeds, it is more likely than not that the franchise would sell for an amount in excess of $150,000 and therefore in excess of $75,000.

14. FII does not contest Gilbert's demand for arbitration, but is exercising its right to have this preliminary dispute determined in this forum.

1    I declare under penalty of perjury under the laws of the State of California and the
2    United States of America that the foregoing is true and correct to the best of my
3    knowledge and belief and that this declaration was executed by me on July 7, 2008 at
4    Carrollton, Texas.

Dated: July 7, 2008

_____
Larry Lane

-4-
DECLARATION OF LARRY LANE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND – CASE NO.
CV 08-03043 VRW

**FASTSIGNS®**

May 27, 2008

Via Federal Express, Electronic Mail, Certified Mail – Return Receipt Requested, Regular US Mail and Facsimile

Mid-Peninsula Marquee, Inc.
Attn: Norm Gilbert
FASTSIGNS
2504 El Camino Real
Redwood City, CA 94061

Re:  FASTSIGNS International, Inc. ("FII") Franchise
     Location Number 64201

Dear Norm:

Please be advised that FII cannot accept your request for additional time to resolve the outstanding amounts due to FII and NAC, as requested in your correspondence of May 21.

We have previously clarified our position regarding the request for royalty reduction on the sale in question. Per the instructions for processing a royalty reduction request as outlined in the Operations Manual, "To receive the Royalty Reduction, you *must* submit the proper documentation within 90 days of the sign transaction". Obviously it was not your intent to report the transaction at all which would bring into question why we would allow the reduction even if within the allotted time frame, but certainly it has far exceeded the 90 day deadline since the transaction occurred.

Due to your non-compliance in resolving all outstanding issues as per our correspondence dated May 19, 2008 FII hereby terminates your Franchise Agreement dated November 12, 2006 (the "Agreement") between you and FII for the FASTSIGNS Center located at 2504 El Camino Real, Redwood City, California 94061 (the "Center").

We are terminating your Agreement for the following reasons:

1. You have violated Sections 16.B. (14) and (15) by not paying amounts due as designated in our previous correspondence.

In an attempt to give you a chance to recoup your investment in the business, we will defer the effective date of this termination for up to 90 days, if you agree to sell your Center during this interim period. This offer to defer the termination date is made contingent upon your agreement that FII may delay its option of purchasing the assets of the business as set forth in Paragraph 17.G. of the Agreement for up to 90 days from today in the event a buyer can't be found for your Center.

FASTSIGNS International, Inc. • 2542 Highlander Way • Carrollton, TX 75006 • 214-346-5600 • FAX: 972-248-8201 • www.fastsigns.com

EXHIBIT A

# FASTSIGNS.

Mid-Peninsula Marquee, Inc.
Attn: Norm Gilbert
May 27, 2008
Page Two

We request that you advise us of your intent to accept this offer by signing in the space provided below and returning a copy of this letter no later than June 6, 2008. In the event you do not accept this offer, then the effective date of this termination will be June 9, 2008.

Sincerely,

Larry Lane
President

cc:   Gary Salomon
      Mary Ryan
      Susan Last
      Trent Lensch
      Drue Townsend
      Douglas W. Dal Cielo, Esq.
      Dennis Wieczorek, DLP Piper

"To: Larry Lane, FII

I understand that my franchise has been terminated, but that I can defer the date of termination as provided above. I would like the opportunity to sell my business to a purchaser approved by FII for a period of up to 90 days, which will begin no later than June 6, 2008. I agree that, if I am unable to sell my business to such an approved purchaser, FII has the right to purchase the assets of the business under my franchise agreement and that FII's right to purchase shall be extended until the end of the 90-day period described above.

Mid-Peninsula Marquee, Inc.
By:_____
Its:_____

CALIFORNIA RESALES

| $ PURCHASE TRANSFER | Date of Sale of Fran-Chise | Sales for 1-12 Months Before Purchase Divided By Last Year's Sales | Purchase Price |
|---|---|---|---|
| $450,000 | 8/31/99 | $560,733 | 80% |
| $375,000 | 11/17/00 | $589,683 | 64% |
| $210,000 | 8/28/01 | $360,000 | 58% |
| $250,000 | 4/16/02 | $468,000 | 53% |
| $60,000 | 5/20/04 | $221,000 | 27% |
| $160,000 | 5/25/05 | $240,000 | 67% |
| $425,000 | 7/1/05 | $775,000 | 55% |
| $162,000 | 8/5/05 | $266,000 | 61% |
| $530,000 | 9/1/05 | $768,000 | 69% |
| $255,000 | 10/1/05 | $428,000 | 60% |
| $75,000 | 1/20/06 | $161,000 | 47% |
| $450,000 | 1/20/07 | $729,000 | 62% |
| $285,000 | 5/7/07 | $376,000 | 76% |
| $395,000 | 4/7/07 | $631,000 | 63% |
| $695,000 | 11/15/07 | $1,300,000 | 53% |
| $235,000 | 11/25/07 | $400,000 | 59% |
| $55,000 | 3/15/08 | $139,000 | 40% |
| $330,000 | 3/7/08 | $828,000 | 40% |
| ($29,000 plus assumed note of unknown amount) | 2/16/99 | $166,160 | Unknown |

EXHIBIT B

# ACCOUNTS RECEIVABLE REPORT

**Report Criteria**
Store Number: 64201
Store Range: N/A
Date Range: 1/1/2007 to 12/31/2007
Region: USA
Delinquent: false
Printed On: 7/2/2008 2:37:34 PM

| Date | Rep | Sales |
|---|---|---|
| Store: [REDACTED] | | |
| 1/31/2007 | 701 | 48,004.01 |
| 2/28/2007 | 702 | 51,647.57 |
| 3/31/2007 | 703 | 58,341.62 |
| 4/30/2007 | 704 | 56,840.75 |
| 5/31/2007 | 705 | 49,154.65 |
| 6/30/2007 | 706 | 46,256.66 |
| 7/31/2007 | 707 | 57,870.74 |
| 8/31/2007 | 708 | 60,145.27 |
| 9/30/2007 | 709 | 53,248.71 |
| 10/31/2007 | 710 | 75,494.54 |
| 11/30/2007 | 711 | 40,106.82 |
| 12/31/2007 | 712 | 40,154.98 |
| Sub Total | | 637,266.32 |
| Totals | | 637,266.32 |

REDACTED

EXHIBIT C

# ACCOUNTS RECEIVABLE REPORT

**Report Criteria**
Store Number: 64201
Store Range: N/A
Date Range: 1/1/2008 to 12/31/2008
Region: USA
Delinquent: false
Printed On: 7/2/2008 2:38:48 PM

Store #: 64201 [REDACTED]

| Date | Rep | Sales |
|---|---|---|
| 1/31/2008 | 801 | 70,281.05 |
| 2/29/2008 | 802 | 55,440.95 |
| 3/31/2008 | 803 | 49,028.19 |
| 4/30/2008 | 804 | 50,154.69 |
| 5/31/2008 | 805 | 231,144.32 |
| 6/30/2008 | 806 | 70,276.57 |
| Sub Total | | 526,325.77 |
| Totals | | 526,325.77 |