1  JEFFREY M. HAMERLING (Bar No. 91532)
   ERIN FRAZOR (Bar No. 251324)
2  DLA PIPER US LLP
   153 Townsend Street, Suite 800
3  San Francisco, CA  94107-1957
   Tel:  415.836.2500
4  Fax:  415.836.2501

5  Attorneys for Defendant
   FASTSIGNS INTERNATIONAL, INC.
6

7                    IN THE UNITED STATES DISTRICT COURT

8                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                         SAN FRANCISCO DIVISION

10

11  NORMAN GILBERT,
                                        Case No. CV 08-03043 VRW
12          Plaintiff,
                                        DEFENDANTS' AMENDED
13      v.                              MEMORANDUM OF POINTS AND
                                        AUTHORITIES IN OPPOSITION TO
14  FASTSIGNS INTERNATIONAL, INC. and   PLAINTIFFS' MOTION TO REMAND
    DOES 1-20, inclusive,               (INCLUDES TABLE OF CONTENTS AND
15                                       AUTHORITIES)
            Defendants.
16                                       Date:  July 10, 2008
                                        Time:  2:30
17                                       Judge:  Hon. Vaughn R. Walker

18

19

20

21

22

23

24

25

26

27

28

WEST\21459862.7

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS................................................................................................. 2

    A.    The Parties' Relationship And Attempted Termination, And The Commencement And Removal Of This Litigation. ................................................. 2

    B.    Allegations Of Gilbert's Pleadings Regarding The Amount In Controversy ........ 3

    C.    Facts Relating To The Valuation Of Gilbert's Franchise. ..................................... 4

III. ARGUMENT .................................................................................................................... 5

    A.    Remand Is Unwarranted Because FII's Evidence Shows that It is More Likely than Not That the Amount in Controversy Exceeds $75,000 .................... 5

        1.    Legal Standards ........................................................................................ 5

    B.    Gilbert's Pleadings And The Evidence Presented By FII In Opposition To Remand Shows That It Is More Likely Than Not That The Amount In Controversy Far Exceeds The Jurisdictional Threshold ....................................... 7

        1.    Because Gilbert Is Seeking To Save His Business From Destruction, An Appropriate Measure Is The Value of Gilbert's Franchise .................................................................................................. 7

        2.    The Evidence Presented by FII Compels The Conclusion that The Amount Allegedly In Controversy Is More than $75,000 ........................ 8

    C.    Gilbert's Claim That "Forum Shopping Defeats FII's Notice Of Removal And Request For Attorneys' Fees Should Be Rejected .......................................... 9

IV. CONCLUSION................................................................................................................ 10

1

**TABLE OF AUTHORITIES**

2

Page

3

4

**CASES**

5

*Alexander v. Fed Ex Ground Package System, Inc.*,
6
   2005 WL 701601, 2005 U.S. Dist. LEXIS 5129 (N.D. Cal. March 25, 2005) ........................ 6

7

*Cohn v. Petsmart, Inc.*,
   281 F.3d 837 (9th Cir. 2002) ................................................................................................ 6, 8
8

*First State Ins. Co. v. Callan Associates, Inc.*,
9
   113 F.3d 161 (9th Cir. 1997) ...................................................................................................... 9

10

*General Dentistry for Kids, LLC v. Kool Smiles*,
   2008 WL 1937316, no LEXIS Cite Available (D. Ariz. April 28, 2008) ................................. 6
11

12
*Guglielmino v. McKee Foods Corp.*,
   506 F.3d 696 (9th Cir. 2007) ................................................................................................. 5, 6

13

*Helm v. Alderwoods Group, Inc.*,
14
   2008 WL 200251, no LEXIS Cite Available (N.D. Cal. May 7, 2008) ..................................... 2

15
*Hunt v. Washington State Apple Advertising Commission*,
   432 U.S. 333, 97 S.Ct. 2434 (1977) ....................................................................................... 7, 8
16

17
*Korn v. Polo Ralph Lauren Corp.*,
   536 F. Supp. 2d 1199 (E.D. Cal. 2008) ..................................................................................... 2

18

*Kroske v. U.S. Bank Corp.*,
19
   432 F.3d 976 (9th Cir. 2005) ...................................................................................................... 6

20
*Martin v. Franklin Capital Corp.*,
   546 U.S. 132, 126 S.Ct. 704 (2005) ........................................................................................... 9
21

22
*Moore v. Genesco, Inc.*,
   2006 WL 2691390, 2006 U.S. LEXIS 71115 (N.D. Cal. Sept. 20, 2006) ................................ 6

23
*Ridder Bros., Inc. v. Blethen*,
24
   142 F.2d 395, 399 (9th Cir. 1944) ............................................................................................. 6

25
*Sanchez v. Monumental Life Insurance Co.*,
   102 F.3d 398 (9th Cir. 1996) ...................................................................................................... 6
26

27
*Singer v. State Farm Mut. Auto. Ins. Co.*,
   116 F.3d 373 (9th Cir. 1997) ...................................................................................................... 6

28

## TABLE OF AUTHORITIES
### (continued)

Page

*Valdez v. Allstate Ins. Co.,*
    372 F.3d 1115 (9th Cir. 2004)..................................................................................... 6

*Williams v. Costco Wholesale Corp.,*
    471 F.3d 975 (9th Cir. 2006)...................................................................................... 9

*Willingham v. Morgan,*
    395 U.S. 402, 89 S.Ct. 1813 (1969) ......................................................................... 6


**STATUTES**

28 U.S.C.A.§ 1332 ......................................................................................................... 5, 8

1    FASTSIGNS INTERNATIONAL, INC. ("FII") respectfully submits the following

2    opposition to the motion for remand filed by Plaintiff Norman Gilbert ("Gilbert").

3    **I.    INTRODUCTION**

4        This matter involves the termination of Mid-Peninsula Marquee, Inc.'s ("Mid-

5    Peninsula's") Franchise Agreement with FII, which Gilbert executed in 2001 and subsequently

6    transferred to Mid-Peninsula, a corporation of which he is President.  FII terminated Gilbert's

7    franchise because Gilbert purposely hid a significant sale from FII and then refused to pay the full

8    amount of royalty payments and audit fees.  After FII exercised certain contractual rights to

9    discontinue electronic services provided to Gilbert, Gilbert filed a complaint in Superior Court in

10   San Mateo County, California, obtained a temporary restraining order and sought preliminary

11   injunctive and declaratory relief.  FII removed the action to this court based on diversity

12   jurisdiction.

13       Gilbert argues that because his complaint does not  presently include a prayer for

14   damages, the amount in controversy does not exceed $75,000.  Gilbert's argument flies in the

15   face of the settled rule that in action seeking an injunction, the value of the injunction to the

16   plaintiff is one measurement of  the amount in controversy.  Gilbert claims that the amount in

17   controversy requirement is not met, despite the fact that his request for injunctive relief is replete

18   with allegations that without an injunction pending arbitration of this action, he will face the

19   forfeiture of his business.  As stated in the accompanying declaration of Larry Lane in support of

20   this memorandum, FII has ample evidence that Gilbert's franchise – the business he is seeking to

21   preserve - is more likely than not worth considerably more than $75,000.  In fact, based upon

22   Gilbert's current sales, it appears that Gilbert contends that he will lose sales in the amount of

23   $75,000 in less than three (3) months.

24       Gilbert cannot ask for an injunction based on alleged dire consequences and at the same

25   time contend that the dispute in controversy is not in excess of $75,000.

26        FII does not believe that Gilbert will suffer irreparable harm or that his business will be

27   "forfeited" without the preliminary injunction.  FII will demonstrate at the appropriate

28   preliminary injunction hearing that Gilbert has neither shown the requisite harm nor the

-1-

WEST\21459862.7

1    probability of success for issuance of a preliminary injunction.  However, for purposes of this

2    motion for remand, FII is entitled, and the court is required, to assume the truth of plaintiff's

3    allegations on their face to show that the requisite jurisdictional amount is in dispute.[1]  And

4    Gilbert's allegations demonstrate that this is the case.

5    **II.    STATEMENT OF FACTS**

6        **A.    The Parties' Relationship And Attempted Termination, And The**
             **Commencement And Removal Of This Litigation.**
7

8        On or about November 12, 2001, FII and Gilbert entered into a Franchise Agreement

9    providing Gilbert the right to operate a FASTSIGNS sign, graphics, and banner store under the

10   FII trademark, service mark, and trade name in Redwood City, California.  (Declaration of Larry

11   Lane in Opposition to Plaintiff's Motion to Remand ("Lane Decl."), ¶3).  The franchise was

12   transferred to Mid-Peninsula Marquee, Inc., a California corporation that Gilbert formed to

13   operate the franchise business.  (*Id.*)  (For purposes herein, Gilbert and Mid-Peninsula

14   collectively will be referred to as "Gilbert").

15       On or about May 27, 2008, FII notified Gilbert of the termination of the Franchise

16   Agreement pursuant to the default and termination provisions of his Franchise Agreement,

17   effective June 9, 2008, because Gilbert admittedly did not report a significant sale of over

18   $160,000 to avoid royalty payments and then failed to pay the full amount of royalties and audit

19   fees owed.  (Id., ¶5 -7.)  Thereafter, as of the June 9 date of termination, after certain negotiations

20   concerning the termination date failed, FII discontinued Gilbert's access to e-mail, and FII's

21   intranet and website communications, as permitted by the party's agreement in such

22   circumstances. (*Id.*, ¶ 8). ¶

23   _____

24   [1]    *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("In
     measuring the amount in controversy, a court must assume that the allegations of the complaint

25   are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint.
     The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what

26   a defendant will *actually* owe) (citations omitted); *Helm v. Alderwoods Group, Inc.*, 2008 WL
     2002511, at *4, no LEXIS Cite (N.D. Cal. May 7, 2008) ("The court must assume the truth of the

27   allegations in the complaint and that a jury will return a verdict for the plaintiff on all claims
     alleged").

28

WEST\21459862.7                                        -2-

OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND –CASE NO. CV 08-03043 VRW

1    On June 11, 2008, Gilbert  filed a complaint in Superior Court in San Mateo County, and

2    obtained on an ex-parte basis a temporary restraining  requiring FII to restore access to the

3    electronic services pending arbitration of his dispute with FII  which would also prohibit FII from

4    interfering with Gilbert's use and enjoyment of the business. (*See* Declaration of Gregory M.

5    Gentile in Support of Plaintiff's Motion to Remand ("Gentile Decl.") and Complaint for

6    Injunctive and Declaratory Relief, attached as Exhibit C, thereto ("Complaint")).   FII timely filed

7    its petition to remove the action based on diversity of citizenship on June 20, 2008.  (*See* Notice

8    of Removal attached to Gentile Decl. as Exhibit D.)

9    FII does not contest Gilbert's demand for arbitration, but is exercising its right to have this

10    preliminary injunction dispute determined in this forum. (Lane Decl., ¶ 14.)

11    **B.    Allegations Of Gilbert's Pleadings Regarding The Amount In Controversy.**

12    Gilbert's Complaint does not allege a specific amount of damages, although it does allege

13    that Gilbert has suffered damages and will pray leave to amend the Complaint to allege an exact

14    amount of damages if this becomes necessary.  (Complaint,  ¶ 16.)  However, the primary relief

15    sought is injunctive and declaratory relief.  The Complaint contains the following allegations

16    concerning  Gilbert's injuries:

17
18    Defendant's acts are restricting GILBERT from performing any
      business activities and is economically injuring him and his
      customer base to his detriment.  Plaintiff has no speedy or adequate
19    remedy at law for the on-going injuries being suffered … and
      GILBERT is suffering the loss of its present business and future
      business and enjoyment of its business property as a result of
20    Defendant's actions.

21    (Complaint, ¶ 14.)

22    Defendant's activities are forcing GIBERT to forfeit all of his
      attendant business property rights.
23

24    (Complaint ¶ 19.)

25    Gilbert's memorandum of points and authorities in support of his application for a

26    temporary restraining order and order to show cause re preliminary injunction ("Gilbert's MPA re

27    Injunction") amplified on these assertions with the following statements:

28    Clearly, the disappearance of the web-site cannot be discounted as

WEST\21459862.7                          -3-

having a devastating effect of business [sic] since this loss will confuse customers and damage the prospects for continued viability and reliability to meet their sign and graphic needs. [2]

It would be inimical to GILBERT if he were not allowed to operate the franchise until the dispute is resolved <u>since it will result in forfeiture and dilution of his business interest</u> and his efforts for the past five years.

*Id.*, p. 19-20 of 48, lines 27 – p.21, line 1.) (emphasis added.)

The action taken by Defendant is … crippling his business.

(*Id.*, p. 21 of 48, lines 24-25.) ¶

"Further FASTSIGNS' actions is [sic] having a detrimental effect on employees who are now aware of the issues taking place between the parties and are fearful of losing their jobs, with the denial of electronic services causing them to lose faith in the management of the business."

(*Id.*, p. 20 of 48, lines 13-15.)

Gilbert's Declaration in Support of Plaintiff's application for a temporary restraining order and order to show cause re preliminary injunction ("Gilbert's Declaration re Injunction") contained similar assertions:

My business is being irreparably economically harmed by the denial of all electronic services and franchisee support by FASTSIGNS….

"Being cut off from e-mail, not being able to send or respond to e-mail and having no web site presence whatsoever will cause the business to lose a significant amount of daily sales as well as the loss of customer goodwill."

(Gentile Injunction Decl., Exh. B, p. 24-25 of 48, ¶¶ 15-16.)

**C.     Facts Relating To The Valuation Of Gilbert's Franchise.**

The following facts relate to the value of FII's franchise and Gilbert's sales.

1.     From 1999 through 2008, nineteen franchisees under Franchise Agreements with FII located in California sold their franchises.  (Lane Decl., ¶10 and Exhibit B, thereto). Of these franchises, all but three sold for $75,000 or more. (*Id.*)  The three franchises whose prices were

---

[2]     Exhibit B to Declaration of Gregory M. Gentile in Support of Plaintiff's Motion to Shorten Time/and or Specially Set for Hearing Plaintiff's OSC for Preliminary Injunction ("Gentile Injunction Declaration") (Court Docket # 6), p. 16 of 48, line 24-27.

1   lower than $75,000 were all sold at distress sales and had a history of sales in the twelve month

2   period preceding the sale of less than $250,000.  (*Id.*)  One store, with sales of $161,000 in the

3   twelve month period preceding its sale, sold for $75,000. (*Id.*)

4          2.        From 1999 to 2008, all stores located in California with annual sales of $250,000

5   or more during the twelve month period preceding the sale of the franchise sold for at least

6   $150,000. (*Id.*,¶ 11, and Exhibit B thereto.)

7          3.        Gilbert's reported sales in the period from January 1, 2007 to December 31, 2007

8   were $637,266.32.  (*Id.*, ¶ 12, and Exhibit C thereto).  Gilbert's reported sales in the period

9   January 1, 2008 to June 30, 2008 were $526,325.77 (*Id.*)  These sales included a sale for

10  $166,254 that was made in 2007 and which Gilbert belatedly reported in May 2008. (*Id.*)  Hence,

11  Gilbert's sales are in excess of $75,000 per quarter.

12         4.        Based on Gilbert's sales experience over the twelve months preceding this hearing,

13  even if Gilbert sold his franchise for 27% of the his total sales in the twelve month period

14  preceding July 1, 2008, which is by far the lowest percentage which occurred with respect to a

15  California sale in the period from 1999 to 2008, the franchise's value on the open market would

16  more likely than not be in excess of $150,000. (*Id.*, ¶ 13).  This would still be the case if the full

17  $166,254 were subtracted from the sales for this period on the theory that the sale or a portion

18  thereof may have occurred prior to July  1, 2007. ( *Id.*)

19  **III.    ARGUMENT**

20          **A.      Remand Is Unwarranted Because FII's Evidence Shows that It is More Likely
                      than Not That the Amount in Controversy Exceeds $75,000**
21

22                  **1.      Legal Standards.**

23          Gilbert is of course correct that removal is only appropriate when the amount in

24  controversy exceeds $75,000.  (28 U.S.C.A.§ 1332).  However, Gilbert's claim that because he

25  has not alleged any specific amount of monetary damages, this criterion is not met is

26  unequivocally incorrect.  Where, as here, plaintiffs have not specified the amount of damages in

27  their complaint,  a defendant may demonstrate by a preponderance of the evidence that the

28  amount in controversy exceeds the $75,000 jurisdictional requirement. *See Guglielmino v.*

WEST\21459862.7                                    -5-

1   *McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).  Defendant must produce evidence that it

2   is "more likely than not" that the amount in controversy exceeds that amount.  *Id.*; *Valdez v.*

3   *Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

4            When the amount in controversy is not facially apparent from the complaint, the court

5   may consider facts in the removal petition and may require the parties to submit summary-

6   judgment-type evidence relevant to the amount in controversy at the time of removal.  *Kroske v.*

7   *U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins.*

8   *Co.*, 116 F.3d 373, 377 (9th Cir. 1997)).  Even when the notice of removal contains insufficient

9   factual allegations to demonstrate the amount in controversy, it is proper to consider evidence

10  presented at a remand hearing as an amendment to the notice of removal.  *See Cohn v. Petsmart,*

11  *Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (where defendant's notice of removal summarily alleged

12  amount in controversy, district court did not err in considering opposition to remand petition as an

13  amendment to its notice of removal, quoting *Willingham v. Morgan*, 395 U.S. 402, 407, n.3,

14  89 S.Ct. 1813 (1969) "it is proper to treat the removal petition as if it had been amended to

15  include the relevant information contained in the later-filed affidavit"); *Alexander v. Fed Ex*

16  *Ground Package System, Inc.*, 2005 WL 701601 at *3, 2005 U.S. Dist. LEXIS 5129 (N.D. Cal.

17  March 25, 2005) (construing defendant's opposition as an amendment to its notice of removal and

18  denying motion to remand); *General Dentistry for Kids, LLC v. Kool Smiles*, 2008 WL 1937316,

19  no LEXIS Cite Available (D. Ariz. April 28, 2008) (same); *Moore v. Genesco, Inc.*, 2006 WL

20  2691390 at *2, 2006 U.S. LEXIS 71115 (N.D. Cal. Sept. 20, 2006) (granting motion to remand

21  on facts but stating "as a preliminary matter" that a district court may treat an opposition brief as

22  an amendment to the notice of removal).

23           In an action seeking an injunction, the jurisdictional requirement is satisfied "if either

24  party can gain or lose the jurisdictional amount" from the granting or denial of the requested

25  relief."  *Sanchez v. Monumental Life Insurance Co.*, 102 F.3d 398, 405 (9th Cir. 1996); *Ridder*

26  *Bros., Inc. v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944) (holding that for purposes of calculating

27  amount in controversy in single plaintiff injunction action, "[t]he value of the thing sought be

28  accomplished by the action may relate to either or any party to the action").  The test for

WEST\21459862.7                                    -6-

1    determining whether the jurisdictional amount in controversy is met in a declaratory relief action,

2    is the same as for an injunction action. *Hunt v. Washington State Apple Advertising Commission,*

3    432 U.S. 333, 346, 97 S.Ct. 2434 (1977).

4        **B.**    **Gilbert's Pleadings And The Evidence Presented By FII In Opposition To Remand Shows That It Is More Likely Than Not That The Amount In Controversy Far Exceeds The Jurisdictional Threshold**

5

6        **1.**    **Because Gilbert Is Seeking To Save His Business From Destruction, An Appropriate Measure Is The Value of Gilbert's Franchise.**

7

8        Gilbert's complaint, motion for temporary injunction filed in the San Mateo Superior

9    Court and accompanying declarations collectively assert that a preliminary injunction is required

10   in this case to avoid the irreparable injury alleged therein.  The clear import of the following

11   statements and the remaining statements regarded Gilbert's injury quoted in the Factual Statement

12   of this memorandum is that Gilbert's action seeks to prevent the destruction of his business:

13       "Defendant's activities are forcing GIBERT to forfeit all of his attendant business property rights."

14       (Complaint ¶ 19).

15       "It would be inimical to Gilbert if he were not allowed to operate the franchise until the dispute is resolved <u>since it will result in forfeiture and dilution of his business interest</u> and his efforts for the past five years."

16

17       Exhibit B to Gilbert Injunction Decl., p. 19 of 48, lines 27 – p.28, line 1.) (emphasis added.)

18

19       The action taken by Defendant is … crippling his business.

20       (*Id.*, p. 21 of 48, lines 24-25.) ¶

21       "Further FASTSIGNS' actions is [sic] having a detrimental effect on employees who are now aware of the issues taking place between the parties and are fearful of losing their jobs, with the denial of electronic services causing them to lose faith in the management of the business."

22

23

24       (*Id.*, p. 20 of 48, lines 13-15.)

25       ". . . GILBERT is suffering the loss of its present business and future business and enjoyment of his business property as a result of Defendant's actions."

26

27       (Complaint, ¶ 14).

28

1    As the lawsuit was filed to protect Gilbert from forfeiting his business rights, the "object

2    of this litigation" is to protect the value of Gilbert's franchise pending the arbitration hearing.  In

3    cases seeking declaratory or injunctive relief, it is well established that the amount in controversy

4    is measured by the value of the object of the litigation.  *Hunt*, *supra*, 432 U.S.at 347 (1977);

5    *Cohn v. Petsmart*, *supra*, 281 F.3d at 840 (holding that in action seeking injunction to protect

6    against trademark infringement, the amount in controversy was met, because the value of the

7    object of the litigation – plaintiff's trademark rights - exceeded $75,000).

8              **2.    The Evidence Presented by FII Compels The Conclusion that The**
               **Amount Allegedly In Controversy Is More than $75,000.**
9

10    FII has presented the following evidence that the amount in controversy is in excess of

11    $75,000.

12    1.    The value of Gilbert's franchise is worth more than $75,000 based on the sales of

13    other FII franchises in California.  (Lane Decl., ¶10, and Exhibit B, thereto).  (From 1999 to 2008,

14    all stores located in California with annual sales of $250,000 or more during the twelve-month

15    period preceding the sale sold for at least $150,000. (*Id.*,¶11, and Exhibit B thereto.))

16    2.    Gilbert's reported sales for the period from January 1, 2007 to December 31, 2007

17    were $637, 266.32.  (*Id.*, ¶ 12, and Exhibit C thereto).  Gilbert's reported sales from the period

18    from January 1, 2008 to June 30, 2008 were $526,325.77, including the 2007 sale in the amount

19    of $166,254 which was belatedly reported in May 2008.  (*Id.* )  Hence, Gilbert has sales in excess

20    of $75,000 per quarter (*Id.*)

21    4.    Based on Gilbert's sales experience for the last twelve months, even if Gilbert sold

22    his franchise for 27% of his total sales in the twelve month period preceding July 1, 2008, which

23    is by far the lowest percentage which occurred with respect to a California sale in the period from

24    1999 to 2008, and even if the $166,254 sale were excluded from the calculation of sales over the

25    12-month period, the value of franchise on the open market would more likely than not be in

26    excess of $150,000. (*Id.*, ¶ 13.)

27    The foregoing evidence compels the conclusion that it is "more likely than not" that the

28    amount in controversy requirements of 28 U.S.C. Section 1332 have been met by Gilbert's

WEST\21459862.7                                    -8-

1    request for injunctive relief alone, without considering any claims for damages that Gilbert might

2    possibly allege if it considers it necessary to amend its complaint.

3        C.    **Gilbert's Claim That "Forum Shopping Defeats FII's Notice Of Removal And**
4              **Request For Attorneys' Fees Should Be Rejected**

5            Gilbert argues that FII is "forum shopping" but presents no authority that this alleged fact

6    if true would defeat FII's removal.  If the requirements for diversity jurisdiction are met, as FII

7    vigorously contends, then the obligation to exercise jurisdiction is "virtually unflagging".  In *First*

8    *State Ins. Co. v. Callan Associates, Inc.,* 113 F.3d 161 (9th Cir. 1997) the court explained:

9                Although occasionally stigmatized as a form of 'forum shopping,'
             the desire for a federal forum is assured by the constitutional
10           provision for diversity jurisdiction and the congressional statute
             implementing Article III.  In the proper case... the obligation to
11           exercise jurisdiction is virtually unflagging.

12   *See also Williams v. Costco Wholesale Corp.,* 471 F.3d 975, 977 (9th Cir. 2006)  ("With rare

13   exceptions not applicable here, where the district court is presented with a case within its original

14   jurisdiction, it has a 'virtually unflagging obligation to exercise the jurisdiction conferred upon

15   [it] by the coordinate branches of government and duly invoked by litigants.")  Gilbert has cited

16   no authorities holding that alleged forum shopping by a diverse party in litigation in an action

17   meeting the amount in controversy requirement alters this "unflagging" obligation.  Accordingly,

18   as FII has satisfied its burden concerning the amount in controversy, remand should be denied.

19           Equally unavailing is Gilbert's assertion that the court has inherent authority to remand a

20   case to enforce a forum selection agreement.  (Gilbert Memorandum of Points of Authorities In

21   Support of Motion to Remand, p. 4, line 5-7).  This action does not include an action to enforce a

22   forum selection clause.  Indeed, FII does not  contest Gilbert's right to arbitrate the underlying

23   dispute but merely seeks to have Gilbert's motion for preliminary injunction held in this court.

24           Finally, even if this court finds that FII has somehow failed to meet its burden to establish

25   the existence of an amount in controversy of $75,000 or more, the summary-judgment- type

26   evidence presented with this opposition clearly shows that FII has an objectively reasonable basis

27   for removal and cost and attorney fees should not be awarded.  *See Martin v. Franklin Capital*

28   *Corp.,* 546 U.S. 132, 137, 126 S.Ct. 704 (2005) ("[A]bsent unusual circumstances, attorneys fees

WEST\21459862.7                                          -9-

1    should not be awarded under §1447(c) when the removing party has an objectively reasonable

2    basis for removal.")

3    **IV.    CONCLUSION**

4    　　For the foregoing reasons, FII respectfully requests that this Court deny Gilbert's motion

5    for remand.

6    Dated:  July 7, 2008　　　　　　　　　　　DLA PIPER US LLP

7

8    　　　　　　　　　　　　　　　　　　By ____/s/_____

9    　　　　　　　　　　　　　　　　　　　　Jeffrey M. Hamerling
     　　　　　　　　　　　　　　　　　　　　Erin Frazor

10   　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
     　　　　　　　　　　　　　　　　　　　　FASTSIGNS INTERNATIONAL, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28