1  JEFFREY M. HAMERLING (Bar No. 91532)
   ERIN FRAZOR (Bar No. 251324)
2  DLA PIPER US LLP
   153 Townsend Street, Suite 800
3  San Francisco, CA 94107-1957
   Tel: 415.836.2500
4  Fax: 415.836.2501

5  Attorneys for Defendant
   FASTSIGNS INTERNATIONAL, INC.

6

7              IN THE UNITED STATES DISTRICT COURT

8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                   SAN FRANCISCO DIVISION

10

11  NORMAN GILBERT,                    Case No. CV 08-03043 VRW

12              Plaintiff,             **FASTSIGNS INTERNATIONAL, INC.'S**
                                       **OPPOSITION TO PLAINTIFF'S**
13      v.                             **MOTION FOR PRELIMINARY**
                                       **INJUNCTION**
14  FASTSIGNS INTERNATIONAL, INC. and
    DOES 1-20, inclusive,              Date:  August 7, 2008
15                                     Time:  2:30 p.m.
              Defendants.              Judge: Hon. Vaughn R. Walker
16

17

18

19

20

21

22

23

24

25

26

27

28

WEST\21455771.3
FASTSIGNS INTERNATIONAL, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION -
                                                         CASE NO. CV 08-03043 VRW

1

## TABLE OF CONTENTS

2                                                                                                    **Page**

3   INTRODUCTION ................................................................................................................ 1

4   I.      STATEMENT OF FACTS ...................................................................................... 2

        A.      The Franchise Agreement and Gilbert's Violations.................................... 2

5       B.      The Governing Policy Manuals and Communication Services Claimed by
                Gilbert ........................................................................................................ 3
6
    II.     ARGUMENT ......................................................................................................... 4
7
        A.      Legal Standards........................................................................................... 4
8       B.      Gilbert Has Failed to Meet Either Standard for a Preliminary Injunction
                Because He Has Provided No Showing of Probable Success on the Merits .......... 5
9
                1.      Gilbert violated his Franchise Agreement giving FII the right to
10                      terminate, and therefore he cannot show likelihood of success on
                        the merits.......................................................................................... 6
11
                2.      Gilbert has no contractual right to the communication services he
12                      claims, the termination of which he alleges is causing him harm............... 8

        C.      Gilbert's Claims of Inadequate Remedy Are Unconvincing ..................... 9
13
        D.      The Balance of Hardships Favors FII ...................................................... 11
14
    III.    CONCLUSION .................................................................................................... 12

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Ashcroft v. American Civil Liberties Union,*
   542 U.S. 656 (2004) ................................................................................................ 5

5

*Baskin-Robbins, Inc. v. TAJ California, Inc.,*
6   2003 WL 22768662, 2003 U.S. Dist. LEXIS 19943 (C.D. Cal. Oct. 21, 2003) ........................ 7

7

*Burger King Corp. v Agad,*
   911 F. Supp. 1499 (S.D. Fla. Sept. 29, 1995) ..................................................................... 11

8

*Caplan v. Fellheimer Eichen Braverman & Kaskey,*
9   68 F.3d 828 (3d Cir. 1995) ................................................................................................ 10

10

*Colonial Trust Co. v. Goggin,*
   230 F.2d 634 (9th Cir. 1955) ............................................................................................... 5

11

*Curtco, Inc. v. My Favorite Year, Inc.,*
12   Bus. Fran. Guide (CCH) ¶ 10,274 (E.D. La. 1993) ..................................................... 9

13

*Days Inns Worldwide, Inc. v. Patel,*
   2005 WL 4655381, 2005 U.S. Dist. LEXIS 43234 (S.D. Cal. Feb. 7, 2005) ............................ 9

14

*Dymo Industries, Inc. v. Tapeprinter, Inc.,*
15   326 F.2d 141 (9th Cir. 1964) ............................................................................................... 9

16

*Ellis v. Treat,*
   236 F. 120 (9th Cir. 1916) .............................................................................................. 1, 5

17

*Grocery Outlet Inc. v. Albertson's Inc.,*
18   497 F.3d 949 (9th Cir. 2007) ............................................................................................... 5

19

*Iconix, Inc. v. Tokuda,*
   457 F. Supp. 2d 969 (N.D. Cal. Sept. 26, 2006) ............................................................. 6

20

*Lands Council v. Martin,*
21   479 F.3d 636 (9th Cir. 2007) ............................................................................................... 5

22

*Merrill Lynch v. Ran,*
   67 F. Supp. 2d 764 (E.D. Mich. Nov. 4, 1999) ................................................................ 10

23

*Merrill Lynch, Pierce, Fenner & Smith v. Rodger,*
24   75 F. Supp. 2d 375 (M.D. Pa. 1999) ................................................................................ 10

25

*Miller Plymouth Center, Inc. v. Chrysler,*
   286 F. Supp. 529 (D. Mass. Apr. 17, 1968) ....................................................................... 11

26

*North American Financial Group, LTD v. S.M.R. Enterprises, Inc.,*
27   583 F. Supp. 691 (N.D. Ill. Feb. 24, 1984) ...................................................................... 11

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3   *Power & Irrigation Co. of Clear Lake v. Capay Ditch Co.*,
      226 F. 634 (9th Cir. 1915)............................................................................................................ 5

4

    *Pride Technologies, Inc. v. Sun Microsystems Comp. Corp.*,
5      Bus. Fran. Guide (CCH) ¶ 10,407 (N.D. Cal. 1994)................................................................... 9

6   *Salt Lake Tribune Publishing Company, LLC v. AT&T Corp.*,
      320 F.3d 1081 (10th Cir. 2003).................................................................................................. 10

7
    *Sardi's Restaurant Corp. v. Sardie*,
8      755 F.2d 719 (9th Cir. 1985)...................................................................................................... 5

9   *Southeast Alaska v. U.S. Army Corps*,
      472 F.3d 1097 (9th Cir. 2006).................................................................................................... 4
10
    *Southwest Voter Registration Educ. Project v. Shelley*,
11     344 F.3d 914 (9th Cir. 2003)...................................................................................................... 5

12  *Thayer Plymouth Center, Inc. v. Chrysler Motors Corporation*,
      255 Cal. App. 2d 300 (Cal. Ct. App. Oct. 23, 1967)................................................................. 11
13
    *Topanga Press, Inc. v. City of Los Angeles*,
14     989 F.2d 1524 (9th Cir. 1993)..................................................................................................... 6

15  *Weinberger v. Romero-Barcelo*,
      456 U.S. 305 (1982).................................................................................................................... 9
16
    *Zuckerman v. McDonald's Corp.*,
17     Bus. Fran. Guide (CCH) ¶ 9904 (D. Mass. 1991)..................................................................... 9

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

After intentionally cheating his franchisor FASTSIGNS International, Inc. ("FII") out of royalties due under the parties' Franchise Agreement, and later admitting that his conduct was "wrong," "illegal," and a "major violation of the agreement," Plaintiff Norman Gilbert ("Gilbert") now comes to this Court seeking equitable relief to enjoin FII from terminating his franchise and related services.

The equitable maxim that 'He who seeks equity must do equity' is particularly apt in the instant case. *See, e.g., Ellis v. Treat*, 236 F. 120, 123 (9th Cir. 1916). Gilbert admits that his "motivation at the time for failing to report the sale was my own greed." Gilbert purposefully hid a substantial sale that amounted to more than 20 percent of the total revenue from his store in 2007, and then when the violation was discovered he continued to lie to conceal his wrongdoing and refused to pay the entire amount owed. Even as of this date, Gilbert has not paid the entire amount of royalty payments and audit fees due to FII.

Gilbert asks this Court to order FII to provide services that FII is not contractually required to provide to any franchisee under the Franchise Agreement, based on alleged harm to his business that Gilbert brought upon himself by violating his Franchise Agreement. These extra or limited services (email address, intranet access, and website locator) are discretionary services provided by FII to franchisees in good standing. FII's policy manual specifically provides that it may cut off those services at any time with or without cause and cut off services to those franchisees who have not been formally terminated but otherwise committed an infraction of their Franchise Agreement. (See Declaration of Stephanie Brooks in Support of Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction, ("Brooks Decl."), ¶ 5-6 and Exh. B.)

Gilbert's motion should be denied for numerous reasons. First, Gilbert has made no showing of a likelihood of success on the merits because (i) he violated his Franchise Agreement, which was legally terminated for cause by FII, and (ii) he has no contractual right to the services he claims. Second, Gilbert's showing of irreparable harm is conclusory and insufficient, particularly as the harm identified by Gilbert is self-inflicted. Third, the balance of hardships favors FII – FII's injury if the preliminary injunction is granted outweighs Gilbert's self-inflicted

1   injury because the injunction would improperly compel FII to continue its ongoing relationship

2   with Gilbert after FII's confidence in their relationship was destroyed by Gilbert's intentionally

3   dishonest acts.  Consequently, this motion for preliminary injunction should be denied.

4          Additionally, FII wants to inform this Court that it intends to file within the next 10 to 15

5   days its own motion for preliminary injunction enjoining Gilbert from any and all uses of FII's

6   trademarks, service marks, and trade names as a result of Gilbert's violations and continued

7   refusal to comply with FII's requirements for resolving these issues.

8   **I.    STATEMENT OF FACTS**

9          **A.    The Franchise Agreement and Gilbert's Violations.**

10         The Franchise Agreement provides Gilbert with the right to operate a FASTSIGNS sign,

11  graphics, and banner store under the FII trademark, service mark, and trade name in Redwood

12  City, California.  (Brooks Decl., ¶ 3.)  In return, Gilbert is required to pay FII service fees and

13  advertising fees based on a certain percentage of gross sales from Gilbert's store.  (Id. at ¶ 3,

14  Exh. A, § 3.)  Gross sales include all revenues from the sale of any and all services and products

15  by the franchisee from the store, and all other revenues related to the operation of the store.  (Id.)

16         In April 2008, FII conducted an audit of Gilbert's business and discovered that that he had

17  failed to report a significant sale of over $160,000 at his store.  (See Declaration of Larry Lane in

18  Opposition to Plaintiff's Motion to Remand ("Lane Decl."), ¶ 5.)  Gilbert has since admitted that

19  in 2007 he was presented an opportunity for a substantial deal and intentionally failed to report it

20  out of his own greed.  (See Declaration of Shane Beard in Support of Defendant's Opposition to

21  Plaintiff's Motion for Preliminary Injunction, ("Beard Decl."), ¶ 4, Exh. B.)  In an e-mail Gilbert

22  sent to numerous FII franchisees, he admitted that he hid the sale because he believed that he

23  would have to pay approximately $14,000 in royalty payments on the approximately $30,000 he

24  kept for himself from the deal.  (Id.)  In the same e-mail Gilbert plainly admits that "[r]oyalty

25  evasion is wrong and illegal and what I did was in fact wrong and illegal," that his "attempt to

26  evade royalties was clearly wrong and a complete and total violation of our agreement," and that

27  his actions were a "major violation of the agreement."  (Id.) (emphasis added).

28

1       Gilbert also admitted to FII on May 1, 2008 that he tried to avoid reporting the sale and

2   payment of royalties and that the only "mistake" he made was depositing the money in his store

3   account (instead of his personal account) that caused him to be caught. (Lane Decl., ¶ 4.) Gilbert

4   then failed to comply with FII's requirements for resolving these issues by refusing to pay the

5   amounts due and owing to FII for the outstanding royalty payments and audit fees. (Id. at ¶ 6.)

6   Even as of this date, Gilbert has not paid the full amount owed.

7       After Gilbert failed to cure his default, FII provided Gilbert notice of termination of the

8   Franchise Agreement pursuant to its default and termination provisions effective June 9, 2008.

9   (Lane Decl., ¶ 7.) FII also agreed to extend the termination date by 90 days if Gilbert agreed to

10   sell his franchise. (Id. at ¶ 8.) Gilbert rejected FII's offer. Accordingly, on June 9th, FII

11   discontinued Gilbert's access to e-mail, intranet, and website communications. (Id.) The cutoff

12   of those services are specifically permitted under FII's policy with respect to any franchisee not in

13   good standing. (Brooks Decl., ¶ 5, Exh. B.) Subsequently, FII agreed to forward store e-mails

14   for a limited time to Gilbert's personal e-mail address, notwithstanding that FII had no obligation

15   to do so. (Lane Decl., ¶ 8.)

16       **B.**    **The Governing Policy Manuals and Communication Services Claimed by**

17              **Gilbert.**

18       Gilbert's complaint and application for preliminary injunction, filed in the Superior Court

19   of San Mateo County, California and removed to this Court, seek injunctive and declaratory relief

20   to enjoin the termination of his FASTSIGNS electronic communication services. However,

21   neither the Franchise Agreement nor the various operating manuals that the Franchise Agreement

22   incorporates (both of which Gilbert expressly agreed to) grant him such rights.

23       The Franchise Agreement itself does not grant a franchisee rights to e-mail, website, and

24   E-Commerce communication services. (Brooks Decl., ¶ 4 and Exh. A.) The Agreement does

25   provide that the franchisee will receive various manuals and kits (collectively "Manuals")

26   governing the operation of the store. (Id. at ¶ 5, Exh. A, § 14.) Under the Franchise Agreement,

27   in order to protect the reputation and goodwill FII has generated under its trademarks and service

28   marks, the franchisee is required to conduct its business in accordance with all of the following:

1   (i) the Manuals, (ii) other written directives FII may issue from time to time, and (iii) any other

2   manuals and materials created or approved for use in the operation of the store.  (Id. at ¶ 7.)

3        The Manuals provide, among other things, various electronic-commerce services to

4   franchisees in good standing, including:  FASTSIGNS Online Intranet service ("FSOL"),

5   including e-mail and other services; E-Commerce website participation; and FII's File Transfer

6   Protocol Site ("FTP Site") for transmitting large graphic files for customers.  (Brooks Decl., at

7   ¶ 5, Exh. B.)  However, these are discretionary services that FII has a right to terminate at any

8   time with or without cause, and with or without notice, for any reason whatsoever.  (Id. at ¶ 6 and

9   Exh. B.)  Specifically, under "Attachment A" in the FII Operations Manual, which applies to the

10  above-mentioned services, FII may:

11  > [L]imit or terminate [a franchisee's] access to any part or all of the FTP Site, the

12  > Service, E-Commerce Participation and any related service(s) at any time, with or
    > without cause, with or without notice, effective immediately, for any reason

13  > whatsoever. . . .

14  > FII shall have no obligation to maintain any content in [a franchisee's] account or
    > to forward any unread or unsent messages to [a franchisee] or any third party.

15

16  (Id. at ¶ 6, Exh. B, at 1-46 to 1-47.)  Gilbert signed the Manuals and agreed to these terms in order

17  to participate in the electronic-services programs.  (Id. at ¶ 8, Exh. C.)  Yet despite FII's

18  termination of Gilbert's Franchise Agreement for cause, and the fact that he has no contractual

19  right to these electronic services, Gilbert presently seeks the extraordinary remedy of preliminary

20  injunctive relief.  For the reasons discussed below, the Court should deny Gilbert's motion for

21  preliminary injunction because he has failed to demonstrate why he is entitled to such

22  extraordinary relief.

23  **II.    ARGUMENT**

24      **A.    Legal Standards**

25       The Ninth Circuit "has recognized two different sets of criteria for preliminary injunctive

26  relief."  *Southeast Alaska v. U.S. Army Corps*, 472 F.3d 1097, 1100 (9th Cir. 2006).  The "general

27  test . . . require[es] a plaintiff to establish (1) a strong likelihood of success on the merits, (2) the

28  possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of

WEST\21455771.3

-4-

1    hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)."

2    *Lands Council v. Martin*, 479 F.3d 636, 639 (9th Cir. 2007) (internal quotation marks and citation

3    omitted). The "alternative test" in this Circuit for preliminary relief requires the moving party to

4    "demonstrate[] either '(1) a combination of probable success on the merits and the possibility of

5    irreparable injury *or* (2) the existence of serious questions going to the merits *and* that the balance

6    of hardships tips sharply in [its] favor.'" *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d 949,

7    951 (9th Cir. 2007) (quoting *Sardi's Restaurant Corp. v. Sardie*, 755 F.2d 719, 723 (9th Cir.

8    1985)) (emphasis in original).

9         Under either test, the analysis "creates a continuum:  the less certain the district court is of

10   the likelihood of success on the merits, the more plaintiffs must convince the district court that the

11   public interest and balance of hardships tip in their favor." *Southwest Voter Registration Educ.*

12   *Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003).

13        **B.**     **Gilbert Has Failed to Meet Either Standard for a Preliminary Injunction**
            **Because He Has Provided No Showing of Probable Success on the Merits.**

14

15        Under any formulation, to obtain a preliminary injunction, Gilbert has the burden to show

16   that he is "likely" to prevail on the merits. *Ashcroft v. American Civil Liberties Union*, 542 U.S.

17   656, 666 (2004). Moreover, the equitable maxim that 'He who seeks equity must do equity' bars

18   Gilbert's claim for preliminary injunctive relief. *See Ellis v. Treat*, 236 F. 120, 123 (9th Cir.

19   1916) (denying specific performance, a discretionary remedy, where complainant does not, on his

20   part, show compliance with the substantial conditions of a contract, under the rule that he who

21   seeks equity must do equity); *see also Colonial Trust Co. v. Goggin*, 230 F.2d 634, 636 (9th Cir.

22   1955); *Power & Irrigation Co. of Clear Lake v. Capay Ditch Co.*, 226 F. 634, 639 (9th Cir.

23   1915).

24        Gilbert's vague and unarticulated assertion that he has shown a likelihood of success

25   based on his "position that he will prevail at arbitration since [he] contends the arbitral dispute is

26   conjured in bad faith by the Defendant and is punitive" does not meet this requirement.

27   (Memorandum of Points and Authorities in Support of Plaintiff's Ex Parte Application for

28   Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction, ("Plaintiff's

WEST\21455771.3                                        -5-

1    MPA in Support"), at 5:24-25.)

2    　　　Even under the sliding scale theory of preliminary injunctions, "a party seeking an

3    injunction 'need not demonstrate that he will succeed on the merits, but must at least show that

4    his cause presents serious questions of law worthy of litigation.'" *Iconix, Inc. v. Tokuda*, 457 F.

5    Supp. 2d 969, 975 (N.D. Cal. Sept. 26, 2006) (quoting *Topanga Press, Inc. v. City of Los Angeles*,

6    989 F.2d 1524, 1528 (9th Cir. 1993)). "'Serious questions' are those which are substantial,

7    difficult, and doubtful, as to make them fair ground for litigation and thus for more deliberative

8    investigation." *Iconix*, 457 F. Supp. 2d at 975 (citation omitted). "Although the serious questions

9    posed by the movant need not promise a certainty of success, nor even a probability of success,"

10   the Ninth Circuit has indicated that the movant "must nevertheless demonstrate a fair chance of

11   success on the merits." *Id.* (internal quotation omitted).

12   　　　Gilbert does not even raise a question, much less a serious question, that he has a fair

13   chance of success on the merits worthy of litigation or arbitration.  Gilbert violated the Franchise

14   Agreement, admitted his wrongdoing, and FII's termination of the franchise and related services

15   was entirely proper.  Gilbert's conclusory allegation, without any evidentiary support, that it is his

16   "position" that he will prevail at arbitration based on alleged bad faith by FII is insufficient under

17   either standard for a preliminary injunction.  (Plaintiff's MPA in Support, at 5:24-25.)

18   　　**1.　　Gilbert violated his Franchise Agreement giving FII the right to terminate,
     　　　　　and therefore he cannot show likelihood of success on the merits.**
19

20   　　　FII properly terminated Gilbert's Franchise Agreement for good cause for his intentional

21   failure to report and pay royalties on a significant sale as required by the agreement.  Specifically,

22   Gilbert violated sections 16B (14) and (15) of the Franchise Agreement, which provide for

23   immediate termination upon the following material defaults, among others:

24   　　　　　(14)　　If Franchisee or any Controlling Principal fails, refuses, or neglects
     　　　　　to promptly pay any monetary obligation owing to Franchisor or its subsidiaries
25   　　　　　or affiliates when due, or to submit the financial or other information required by
     　　　　　Franchisor under this Agreement, and does not cure such default within ten (10)
26   　　　　　days following notice thereof from Franchisor;

27

28

WEST\21455771.3
                                                -6-
FASTSIGNS INTERNATIONAL, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION -
                                                            CASE NO. CV 08-03043 VRW

1             (15)   If Franchisee is in default with respect to the payment of any

2    monetary obligation due to Franchisor hereunder more than two (2) times during
    any immediately preceding twelve (12) month period of time, whether or not

3    cured by Franchisee after notice by Franchisor.

4          Gilbert admitted that he concealed the sale out of his own greed in order to keep the

5    proceeds for himself. (Beard Decl., at ¶ 4, Exh. B.) He also admitted that his actions were a

6    major violation of the agreement. (Id.) Such failure to report and pay royalties as required by the

7    Franchise Agreement were proper grounds for FII's termination. *See Baskin-Robbins, Inc. v. TAJ*

8    *California, Inc.*, 2003 WL 22768662, at *1, 2003 U.S. Dist. LEXIS 19943 (C.D. Cal. Oct. 21,

9    2003) (ordering termination of franchise agreement with good cause for franchisee's intentional

10    underreporting of gross sales and thereby underpaying franchise fees and other amounts owed).

11          Additionally, FII's termination of communication services that it makes available to

12    franchisees in good standing was proper. Under the FASTSIGNS US Limited Services Policy

13    ("Limited Services Policy") contained in the FII Operations Manual:

14        [S]ome services that we currently make available to all FASTSIGNS franchisees,
    regardless of their compliance status, will be eliminated for those that have

15        exercised certain infractions. These infractions may involve compliance issues

16        and in some cases, direct violations of the Franchise Agreement.

17    (Brooks Decl., ¶ 5, Exh. B.) Penalties under the Limited Services Policy include removal from

18    the FII Intranet or any other FII e-mail system and removal from the E-commerce portion of the

19    FASTSIGNS website. (Id.)

20          Termination of Gilbert's Franchise Agreement and termination of communication services

21    was proper, and at the very least his actions constituted infractions invoking the Limited Services

22    Policy. Gilbert admitted that he failed to properly report sales under the Franchise Agreement

23    and that his actions were illegal and a major violation of the agreement. (Beard Decl., ¶ 4,

24    Exh. B; Lane Decl., ¶ 4-5.) Gilbert's failure to pay a monetary obligation due and owing to FII

25    was a default in violation of the Franchise Agreement. (Lane Decl., ¶ 7.) Gilbert's non-

26    compliance in resolving these issues were grounds for FII's proper termination of the Franchise

27    Agreement. Since Gilbert has not shown a likelihood of prevailing on the merits he is not entitled

28    to a preliminary injunction.

2.    **Gilbert has no contractual right to the communication services he claims, the termination of which he alleges is causing him harm.**

Gilbert will also not prevail on the merits of his injunctive and declaratory relief claims because he has no contractual right to the business communication systems, the termination of which he seeks to enjoin. (Complaint for Injunctive and Declaratory Relief ("Complaint").) Gilbert claims that he is entitled to injunctive and declaratory relief based on his allegations that FII has interfered with his business communication systems, yet neither the Franchise Agreement nor the various operating manuals that the Franchise Agreement incorporates grant him such rights.

Nowhere in the Franchise Agreement is Gilbert as franchisee granted rights to the email, website, and E-Commerce communication services, of which he claims unlawful termination. Rather, under Section 14A of the Franchise Agreement, a franchisee receives on loan various confidential manuals and kits (collectively "Manuals"), and is required to conduct its business in accordance with the Manuals and any other materials created or approved for use in operation of the franchisee's center. (Brooks Decl., ¶¶ 5, 7, Exh. A, at § 14.) Additionally, under "Attachment A" in the FASTSIGNS Operations Manual, which applies to the e-mail, website, and E-Commerce policies, FII may limit or terminate a franchisee's access to any or all electronic services at any time, with or without cause, for any reason whatsoever. (Id. at ¶ 6, Exh. B, at 1-46 to 1-47.)

Gilbert has failed to establish any contractual right to the services he claims. He alleges that FII has engaged in "unlawful conduct in removing and otherwise cutting off his communication system." (Complaint, ¶ 12.) Yet FII is not required to provide these services, and Gilbert has no contractual right to them under either the Franchise Agreement or the Manuals. The Manuals specifically provide that FII may cut off services at any time, with or without cause, and Gilbert signed these Manuals in order to participate in the online FSOL and E-Commerce participation programs. (Brooks Decl., ¶¶ 6, 8.) Since Gilbert has no contractual right to the services that he alleges form the basis for his injunctive and declaratory relief claims, he cannot show a likelihood of success on the merits and is not entitled to provisional relief.

C.    **Gilbert's Claims of Inadequate Remedy Are Unconvincing.**

Gilbert has failed to show that no adequate remedy exists because money damages could compensate for his alleged business losses. "The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Days Inns Worldwide, Inc. v. Patel*, 2005 WL 4655381, at *3, 2005 U.S. Dist. LEXIS 43234 (S.D. Cal. Feb. 7, 2005) (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "In order to prevail, the moving party must show that a legal remedy is inadequate, meaning that the moving party is faced with an immediate and irreparable injury for which the moving party cannot be compensated with money damages." *Days Inns Worldwide*, 2005 WL 4655381, at *3, 2005 U.S. Dist. LEXIS 43234 (citing *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

Multiple authorities have held that damages are an adequate remedy for termination of a franchise. *See Pride Technologies, Inc. v. Sun Microsystems Comp. Corp.*, Bus. Fran. Guide (CCH) ¶ 10,407 (N.D. Cal. 1994) (loss resulting from termination of distributorship agreement adequately compensable by money damages); *Curtco, Inc. v. My Favorite Year, Inc.*, Bus. Fran. Guide (CCH) ¶ 10,274 (E.D. La. 1993) (any damages franchisee sustained as a result of termination could be remedied by money damages); *Zuckerman v. McDonald's Corp.*, Bus. Fran. Guide (CCH) ¶ 9904 (D. Mass. 1991) (money damages are an adequate remedy for claim of improper termination). Similarly, the availability of the legal remedy of money damages in the present case precludes preliminary injunctive relief.

Gilbert's conclusory statements that FII's actions cause the business to lose a significant amount of daily sales and goodwill are insufficient to establish irreparable injury. Gilbert alleges that damages are not an adequate remedy because:

> As things presently stand, the business is cut off from e-mail and/or not being able to send or respond to e-mail from customers. It has no website presence whatsoever. This causes the business to lose significant amount of daily sales as well as customer goodwill. This inures to the detriment of the small business owner, GILBERT. Moreover, the deletion of the website from the Internet will no doubt perpetuate the detriment to the business.

1    (Plaintiff's MPA in Support, at 6:7-12.) He also alleges FII's actions are "having a detrimental

2    effect on employees who . . . are fearful of losing their jobs." (Id. at 6:13-14.) In the event that

3    Gilbert can prove that FII wrongfully terminated the Franchise Agreement or communication

4    services, money damages are an adequate remedy for his claimed business losses. Gilbert has not

5    demonstrated otherwise.

6         Moreover, Gilbert's asserted injury is completely self-inflicted. FII did not terminate

7    Gilbert's Franchise Agreement or his communication services for a minor or technical breach.

8    FII took its action because Gilbert concealed a significant sale and failed to pay FII the applicable

9    royalty – a failure that goes to the heart of the parties' relationship.

10        Self-inflicted harm is not considered to be irreparable for purposes of an application for

11   preliminary injunction. *Salt Lake Tribune Publishing Company, LLC v. AT&T Corp.*, 320 F.3d

12   1081, 1106 (10th Cir. 2003) (rejecting a claim that change of control of a newspaper was

13   irreparable harm where the change resulted from a contract that the plaintiff negotiated because

14   "[w]e will not consider a self-inflicted harm to be irreparable"); *Caplan v. Fellheimer Eichen*

15   *Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) (reversing a trial court order granting

16   preliminary injunction barring a party in litigation from settling a case and stating that "[b]ecause

17   defendants have acted to permit the outcome that they deem unacceptable, we must conclude that

18   such an outcome is not an irreparable injury. If the harm complained of is self-inflicted, it does

19   not qualify as irreparable."); *Merrill Lynch, Pierce, Fenner & Smith v. Rodger*, 75 F. Supp. 2d

20   375, 382-83 (M.D. Pa. 1999) ("the injury to defendants was self-inflicted. Realizing that Merrill

21   Lynch would probably try to enforce its employment contracts, [defendants] breached them

22   anyway.") (quoting *Merrill Lynch v. Ran,* 67 F. Supp. 2d 764, 779 (E.D. Mich. Nov. 4, 1999) ("In

23   considering the hardships to all involved, however, those suffered by defendants are the least

24   deserving of the court's consideration as their travails were needlessly self-imposed.")).

25        Where, as here, Gilbert's claim of irreparable harm resulted from his intentional violation

26   of the Franchise Agreement, the Court should consider that Gilbert's harm was needlessly self-

27   imposed.

28

WEST\21455771.3

-10-

1          **D.     The Balance of Hardships Favors FII.**

2          The injunctive relief Gilbert seeks in this case is inappropriate because it would be

3  tantamount to granting specific performance of the Franchise Agreement.  "An injunction cannot

4  be granted to prevent the breach of a contract, the performance of which would not be specifically

5  enforced." *Miller Plymouth Center, Inc. v. Chrysler*, 286 F. Supp. 529, 531-32 (D. Mass. Apr.

6  17, 1968) (denying injunctive relief against termination of a dealership agreement without cause

7  because there was no equitable basis to order such a decree of specific performance); *Thayer*

8  *Plymouth Center, Inc. v. Chrysler Motors Corporation*, 255 Cal. App. 2d 300, 303-04 (Cal. Ct.

9  App. Oct. 23, 1967) (finding that a dealership agreement requiring a continuing series of acts and

10  demanding cooperation between the parties is not subject to specific performance, and denying a

11  preliminary injunction accomplishing the same result).

12          An order prohibiting FII from terminating Gilbert's agreement and from terminating

13  electronic services would be tantamount to rewriting the parties' agreement without terms

14  favorable to FII, and then specifically enforcing it.  The parties' trust and confidence have been

15  destroyed by Gilbert's intentional concealment of a significant sale and continued failure to pay

16  resulting royalties and audit fees.  Gilbert's actions cast serious doubt on his future honesty in the

17  ongoing contractual relationship with FII.  Injunctive relief is not appropriate, where, as here, the

18  injunction would require FII to maintain a cooperative relationship with a franchisee with whom

19  all trust and confidence has been lost as a result of the franchisee's violations of the agreement.

20  *Cf. Burger King Corp. v Agad*, 911 F. Supp. 1499, 1507 (S.D. Fla. Sept. 29, 1995) (concluding

21  that state law "does not recognize the remedy of specific performance for a franchise agreement,

22  since such an agreement is viewed as a contract for personal services") (citation omitted); *North*

23  *American Financial Group, LTD v. S.M.R. Enterprises, Inc.*, 583 F. Supp. 691, 699 (N.D. Ill.

24  Feb. 24, 1984) (holding that specific performance of franchise agreement was unavailable

25  because the agreement is at least partially a contract for personal services).

26          Under the present circumstances, the preliminary injunction should be denied because the

27  harm to FII in compelling the relationship to continue outweighs the self-inflicted financial harm

28  alleged by Gilbert, particularly as Gilbert has provided at best slight evidence of the existence of

WEST\21455771.3                              -11-

1   this harm.

2   **III.    CONCLUSION**

3         For the foregoing reasons, FII respectfully requests that this Court deny Gilbert's motion

4   for preliminary injunction since Gilbert has failed to justify why he should be entitled to such

5   extraordinary relief.

6

7   Dated:  July 17, 2008                              DLA Piper US LLP

8

9                                                      By   /s/ Jeffrey M. Hamerling
                                                          Jeffrey M. Hamerling
10                                                        Erin Frazor
                                                          Attorneys for Defendant
11                                                        FASTSIGNS INTERNATIONAL, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FASTSIGNS INTERNATIONAL, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - CASE NO. CV 08-03043 VRW