```
 1  JEFFREY M. HAMERLING (Bar No. 91532)
    ERIN FRAZOR (Bar No. 251324)
 2  DLA PIPER US LLP
    153 Townsend Street, Suite 800
 3  San Francisco, CA 94107-1957
    Tel: 415.836.2500
 4  Fax: 415.836.2501

 5  Attorneys for Defendant
    FASTSIGNS INTERNATIONAL, INC.
 6
```

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NORMAN GILBERT<br><br>Plaintiff,<br><br>v.<br><br>FASTSIGNS INTERNATIONAL, INC., and DOES 1-20, inclusive,<br><br>Defendants. | Case No. CV 08-03043 VRW<br><br>**DECLARATION OF SHANE BEARD IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: August 7, 2008<br>Time: 2:30 p.m.<br>Judge: Hon. Vaughn R. Walker |

I, SHANE BEARD, declare as follows:

1. I am a Franchisee for FASTSIGNS INTERNATIONAL, INC. ("FII"), a corporation that specializes in the production and marketing of signs, graphics, banners, ready-to-apply lettering, trade show displays, and other complementary products and services. I have been a Franchisee for FII since May 1, 1996. My center is located at 931 East Ogden Avenue, Naperville, Illinois.

2. I make this declaration based on my personal knowledge of the facts set forth in this declaration. If called upon to do so, I could and would competently testify to these matters.

3. On July 14, 2008 at 2:29 p.m., I received an e-mail message from Norman Gilbert at his e-mail address of "normg1@adnc.com" titled "I'm in a lot of trouble with FASTSIGNS and could use your help" ("July 14 e-mail from Gilbert") at my FII account

-1-

1  "shane.beard@fastsigns.com" through my FastSigns Intranet Online system. Attached as Exhibit
2  A is a true and correct copy of my Intranet Online system displaying the July 14 e-mail from
3  Gilbert.
4      4.    On July 15, 2008, I read the July 14 e-mail from Gilbert. Also on July 15, I
5  printed a copy of the July 14 e-mail from my FII account through my FastSigns Intranet Online
6  system at my center in Naperville, Illinois. Attached hereto as Exhibit B is a true and correct
7  copy of the July 14 e-mail from Gilbert that I received and printed.
8      I declare under penalty of perjury under the laws of the State of California and the United
9  States of America that the foregoing is true and correct to the best of my knowledge and belief
10 and that this declaration was executed by me on July 16, 2008 at Naperville, IL.

Shane Beard

# Exhibit A



**From:** "Mr. Norm Gilbert" <normg1@adnc.com>   Monday, July 14, 2008 2:29:24 PM
**Subject:** I'm in a lot of trouble with FASTSIGNS and could use your help.
**To:** Scott Snoyer, robb.schmit@fastsigns.com, Sam Cilone, Jeff Youngblood, **Jeff Herig**, Deborah Campbell, Doug Mier <dwmier@yahoo.com>, greg.shugarts@fastsigns.com, **Bill/Joan Belmont**, Don Marcum, Ken Matura, **Al/Annmarie Hall**, **Wayne Dziubinski**, Linda Fong, Martin Murphy, **Bill Brunetti**, **Bill/Cindy Bacon**, **Shane Beard**, Lisa Bondurant, Dave Dushek <d.dushek@fastsigns.com>, Brett Howell, Jerry Hair, Grace Kendell, Joe Kopp, Daniel Larson, Andrea Levine, sunshine.murray@fastsigns.com, John Niemi, theron.russell@fastsigns.com, Carmen Cohnrentzios <carmen.cohnrentzios@fastsigns.com>, barbara.nolan@fastsigns.com, jon.toy@fastsigns.com, rose.snell@fastsigns.com, brian.goldman@fastsigns.com

**Attachments:** Attach0.html   13K

Dear Fellow Franchisee:

I am in a lot of trouble with FASTSIGNS of my own making and in danger of losing my business. I need your help to intervene with Larry Lane and see if I can save myself from financial ruin.

Because I am in expensive litigation with FASTSIGNS, I cannot communicate with Larry directly. Please do not forward this message or print it and share it either. Anything I might say or write can and would be used against me if we continue this dispute through the courts and arbitration.

I don't want to keep fighting with FASTSIGNS via lawyers. I would like to stay as a franchisee. But Larry Lane is insisting I sell my center or they will seize it for a fraction of its real value. I am only still operating today by virtue of a court ordered injunction which FASTSIGNS is vigorously contesting in the Federal Courts. I'm scared and more worried about my future than when I had cancer.

Many of you know some of the background already, but I'd appreciate your taking the time to fully read what follows.

Last year, we got lucky and had the opportunity to wrap 56 vehicles for a local cable company. The deal literally fell into my lap almost by accident, only because I was their client and they like to do business with their own customers. They had never actually heard of FASTSIGNS. The deal was $164K. We didn't actually do any of the work, in fact, none of my employees even knew about the deal. it was 100% done by a third party, including proofs, management, client communication, printing, installation, etc.



**Exhibit B**

415-659-7392

Printed by: Shane Beard
Title: I'm in a lot of trouble with FASTSIGNS and could use your help. : FASTSIGNS1

Tuesday, July 15, 2008  3:06:49 PM
Page 1 of 4

Dear Fellow Franchisee:

I am in a lot of trouble with FASTSIGNS of my own making and in danger of losing my business. I need your help to intervene with Larry Lane and see if I can save myself from financial ruin.

Because I am in expensive litigation with FASTSIGNS, I cannot communicate with Larry directly. Please do not forward this message or print it and share it either. Anything I might say or write can and would be used against me if we continue this dispute through the courts and arbitration.

I don't want to keep fighting with FASTSIGNS via lawyers. I would like to stay as a franchisee. But Larry Lane is insisting I sell my center or they will seize it for a fraction of its real value. I am only still operating today by virtue of a court ordered injunction which FASTSIGNS is vigorously contesting in the Federal Courts. I'm scared and more worried about my future than when I had cancer.

Many of you know some of the background already, but I'd appreciate your taking the time to fully read what follows.

Last year, we got lucky and had the opportunity to wrap 56 vehicles for a local cable company. The deal literally fell into my lap almost by accident, only because I was their client and they like to do business with their own customers. They had never actually heard of FASTSIGNS. The deal was $164K. We didn't actually do any of the work, in fact, none of my employees even knew about the deal. it was 100% done by a third party, including proofs, management, client communication, printing, installation, etc.

I made a horrible and tragic mistake by failing to report the sale to FASTSIGNS. For this, I am truly sorry. In six years of successful operation, it is the one and only time I have failed to report a sale. It was a terrible decision on my part to attempt to hide any transaction, especially such a large one and think I wouldn't get caught.

FASTSIGNS was tipped off about the sale and sent the auditor, who of course found the transaction I had failed to report. I tried on my own to settle with Larry in a phone conversation and failed.

As I have been known to do on occasion, during my conversation with Larry, I put my foot in my mouth and compounded my situation when I misspoke and said that how I structured the deal was my *only* mistake. If fact, my *only* mistake was failing to report the sale. I know I let down lots of people who believe in me when I made such a bad and foolhardy decision.

My motivation at the time for failing to report the sale was my own greed; it seemed that I would have to pay approximately $14,000 in royalties and fees on the approximately $30,000 I kept from the

deal. In hindsight, it would have been far better to pay it fully than to be in the situation I now find myself.

I know this may sound far fetched, but I also didn't want to join the $230K Club and take away my staff's motivation to hit the $80K Club, then $90K, etc. Sounds silly, I know, but they really are motivated to hit those levels. We've come close to hitting $80K but have never actually done it. Reporting a transaction of which they were not aware and of which they were not a part would have removed those incentives. I think in hindsight a simple phone call to headquarters with a request that we forego our $230K Club award would have been sufficient.

Royalty evasion is wrong and illegal and what I did was in fact wrong and illegal and something I deeply regret.

I have tried to make it right by paying what I should have paid in the first place and to be allowed to use Royalty Reduction. I immediately paid $9,500 in royalties and fees and rang the sale through the POS in May. I have acknowledged that I am obligated to pay the audit expenses. I have asked that I not have to go to the added expense of having my financial statements reviewed by a CPA at a cost of $6,000. I have asked for some time to make amends and move forward.

The response from Larry has always been the same, that I must pay the full royalty without reduction and all the expenses and also sell my business, that I am not to be trusted and that I irrevocably violated whatever trust existed between us. Despite my mistake, I don't want to sell my center at this time. That is why I felt I needed to retain counsel and litigate.

It seems that the demand that I sell is based upon my failure to properly communicate with Larry such that he feels I am not to be trusted. It was one word (only) and one really bad choice to use it in conversation with Larry that set in motion this entire series of events. I'd like to see if I can repair the damage of my earlier misstatement and clarify what I meant about how this particular deal was structured.

While my attempt to *evade* royalties was clearly wrong and a complete and total violation of our agreement, we can all agree that royalty *avoidance* is legal. Just like income taxes. Not paying one's taxes or hiding income is a crime called tax evasion. Structuring one's life to maximize itemized deductions to lower one's tax bill is legal. Royalty is an expense like any other and there is nothing inherently immoral, illegal or underhanded in trying to *legally* minimize expenses.

An example might be two centers that do the exact same sub-contracted or installation deal; one bothers to fill out the royalty reduction and in fact legally pays less than the center that fails to avail themselves of that opportunity. Maybe even thousands of dollars less. Two identical sales that result in two wildly different royalty amounts.

The Astound sale was the most out of the box occurrence that I had ever experienced as a FASTSIGNS owner. I had never even been close to such a large job that was clearly beyond the capabilities of my own equipment and staff. I don't think any FASTSIGNS center has every wrapped 56 vehicles, much less getting it done in ten days time.

Because my staff was not even aware of the project and was never involved in any aspect of the job, I believed in hindsight I could have had the client make their check payable to Larger Than Life. I could have structured a binding contract with Larger Than Life to pay my FASTSIGNS center a commission for bringing them the business, which I could have booked through the POS as miscellaneous income; I then could have legally and honestly paid full royalties and fees on that amount and I would have been in total compliance with the franchise agreement. I would not have been hiding anything and the audit would have found nothing out of line; a $30,000 event and all royalties paid. This hypothetical scenario only works if the third party is doing 100% of the work as was the case here and has a history of selling directly to end users; if we so much as touch any part of it, are involved in the design or provide any materials, it's a FASTSIGNS sale. But it really was a 100% brokered deal.

But I didn't do it that way and therefore that scenario is really only hypothetical. Was it a "mistake" to structure the deal the way it was structured? I think so. I believe I had an opportunity to honestly and legally minimize my royalty expense and I failed to avail myself of that opportunity. The client actually asked me who should be the payee on the check. I could have said LTL, Inc. and they would have gladly made the check payable to Larger Than Life.

But, I had the check made out to FASTSIGNS, so even if it wasn't a gross sale under the agreement, it did fall under the "any and all revenues" clause of the agreement and therefore, like it or not, I was obligated to pay royalty and fees on the gross amount and use royalty reduction as allowed.

I failed to do so, tried to hide the sale and that was really my only true mistake, for which I am now paying dearly.

Everything else is wishful thinking about hypothetical situations in hindsight. I really don't think a situation similar to the Astound event will ever occur again. And as the audit proved, save the Astound deal, we have certainly reported each and every subcontracted job as a sale through the system and paid 100% of our royalties and fees. There may even have been opportunities in the past to use Royalty Reduction, but in six years of operation, we have never availed ourselves of those opportunities.

While I don't always agree with everything FII does, I would like to stay a part of this system; I think I add value to this system. I try to help other franchisees. I am profitable and outperforming the system in sales growth; we're up 18.25% YTD over last year. We do $700K a year with just three employees plus me and one free lance installer. Basically, I don't think the punishment of losing

Printed by: Shane Beard  
Title: I'm in a lot of trouble with FASTSIGNS and could use your help. : FASTSIGNS1

Tuesday, July 15, 2008  3:06:49 PM  
Page 4 of 4

my livelihood, my savings, my home and my health from the stress fits the "crime" I committed. I know what I did was wrong and I am trying to make it right, but Larry refuses to budge.

I seek Larry's forgiveness for my actions. We've both already spent a lot of time and money in legal fees in my attempts to keep my business and remain a part of the FASTSIGNS family. My legal bill alone is over $25,000 and climbing. to go to arbitration would cost upwards of $100,000 in legal fees. It's crazy to keep up this legal battle; they have unlimited resources to get me out of the system and I don't.

I hope in light of my more complete explanation of my mistake and the explanation of the misstatements of my subsequent conversation with Larry, Larry might allow me to pay the audit expenses and reconsider his demand that I sell my center and that we can put this matter behind us.

If you have a good relationship with Larry, Gary, or Susan, would you be willing to intervene on my behalf? Again, please do not forward this message to anyone else.

Forcing me out of the system against my will doesn't send a very good message to the FASTSIGNS community. How sad and tragic that an otherwise loyal and responsible owner can be forced to sell for a single albeit major violation of the agreement.

If you feel in your heart a desire to help a fellow owner in distress, I would appreciate any efforts you might care to make on my behalf. While I am happy to answer any questions, there is no need to advise me of any actions you may or may not decide to take to help me. I expect nothing, so any help I might get is a wonderful gift for which I will be eternally grateful.

Whatever way this finally resolves is the way it was meant to be; everything happens for a reason.

All the best . . .

Norm Gilbert  
FASTSIGNS of Redwood City