1   JEFFREY M. HAMERLING (Bar No. 91532)
    ERIN FRAZOR (Bar No. 251324)
2   DLA PIPER US LLP
    153 Townsend Street, Suite 800
3   San Francisco, CA 94107-1957
    Tel: 415.836.2500
4   Fax: 415.836.2501

5   Attorneys for Defendant
    FASTSIGNS INTERNATIONAL, INC.

6

7                  IN THE UNITED STATES DISTRICT COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                       SAN FRANCISCO DIVISION

10

11  NORMAN GILBERT,                    Case No. CV 08-03043 VRW

12          Plaintiff,                 **APPENDIX OF AUTHORITIES NOT
                                        PUBLISHED IN OFFICIAL
13                                      REPORTERS IN SUPPORT OF
        v.                             FASTSIGNS INTERNATIONAL, INC.'S
14                                      OPPOSITION TO PLAINTIFF'S
    FASTSIGNS INTERNATIONAL, INC. and   MOTION FOR PRELIMINARY
14  DOES 1-20, inclusive,              INJUNCTION**
15
            Defendants.                Date:   August 7, 2008
16                                     Time:   2:30 p.m.
                                       Judge:  Hon. Vaughn R. Walker
17

18

19

20

21

22

23

24

25

26

27

28
                                        -1-
    WEST\21472392.1
                                                APPENDIX OF AUTHORITIES
                                                CASE NO. CV 08-03043 VRW

| AUTHORITIES | EXHIBIT |
|---|---|
| *Curtco, Inc. v. My Favorite Year, Inc.*,<br>Bus. Fran. Guide (CCH) ¶ 10,274 (E.D. La. 1993) | 1 |
| *Pride Technologies, Inc. v. Sun Microsystems Comp. Corp.*,<br>Bus. Fran. Guide (CCH) ¶ 10,407 (N.D. Cal. 1994) | 2 |
| *Zuckerman v. McDonald's Corp.*,<br>Bus. Fran. Guide (CCH) ¶ 9904 (D. Mass. 1991) | 3 |

Dated:  July 17, 2008                    DLA Piper US LLP


                                    By    /s/ Jeffrey M. Hamerling
                                       Jeffrey M. Hamerling
                                       Erin Frazor
                                       Attorneys for Defendant
                                       FASTSIGNS INTERNATIONAL, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-2-

WEST\21472392.1

# Exhibit 1

2 of 3 DOCUMENTS

Copyright 2008 CCH Incorporated, All Rights Reserved
CCH Business Franchise Guide

Cases, Rulings, New Developments
U.S. District Court

*Business Franchise Guide (CCH) P 10,274*

May 21, 1993 Dated

**Curtco, Inc., Curtis A. Smith and Sonja Smith v. My Favorite Year, Inc., et. al.**

 U.S. District Court, Eastern District of Louisiana. Civil Action No. 91-3088; Section E/4. Dated May 21, 1993

**Franchisee Seeking to Enjoin Termination Failed to Show Irreparable Harm**

   **Preliminary Relief -- Temporary Restraining Order -- Preservation of Relationship -- Irreparable Harm -- Likelihood of Success on Merits -- Harm to Franchisor. --**

   Termination of a fast food franchisee for failure to pay royalties, advertising fees, and interest owed to the franchisor was not temporarily barred because the franchisee did not demonstrate irreparable harm from the termination. If the franchisee prevailed on the merits of the underlying termination litigation, any injury suffered as a result of the termination could be remedied by awarding damages. In addition, the argument that the franchisor's unfair practices precipitated the contractual dispute fell short of demonstrating a substantial likelihood of success on the merits. Finally, a temporary restraining order would harm the franchisor by binding it to the franchise agreements while allowing the franchisee to violate the terms by continuing to withhold payments, which admittedly were due.

**Order and Reasons**

**[In full text]**

   LIVAUDAIS, D.J.: Plaintiffs Curtco, Inc. et al. have asked this Court to issue a temporary restraining order ("TRO") prohibiting defendants My Favorite Year, Inc. ("MFY") et al. from terminating the franchise agreements between plaintiffs and defendants. Plaintiffs' First Amended Complaint added America's Favorite Chicken ("AFC") as a defendant.

   A hearing on the TRO was held on this date. The Court heard oral argument. Considering the arguments, the briefs submitted, and the law, the Court Denies the application for the reasons set forth below.

**I.  *Brief Factual Background***

   Pursuant to various franchise agreements with defendants, plaintiffs operate several Popeye's retail franchises in the State of Alabama. Paragraph XIV.C in some of the agreements reads as follows:

   Except as provided in paragraph XIV.A and B. of this Franchise Agreement, upon any default by Franchisee which is susceptible [sic] of being cured, Franchisor may terminate this Franchise Agreement only by giving written Notice of Termination stating the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default and curing it to Franchisor's satisfaction with the thirty-day period (or within such shorter time period as Franchisor may reasonably specify), by promptly providing proof thereof to Franchisor. If any such default is not cured within the specified time, or such longer period as applicable law may require, this Franchise Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) day period or such longer period as applicable law may require.

Copyright 2008 CCH Incorporated,All Rights Reserved

The other relevant franchise agreements include provisions substantially similar to Paragraph XIV.C. Plaintiffs admit that they have not paid all royalties, advertising fees, and interest owed to defendants. On April 22, 1993, plaintiffs were notified by letter that if they did not cure the matter within 30 days, AFC would terminate the franchise agreements on May 22, 1993. Plaintiffs then applied to this Court for the above-mentioned TRO.

## II. *Analysis*

In exercising its discretion to grant or deny an application for a TRO, this Court must determine whether the following three factors exist:

(1)

the immediate threat of irreparable injury, loss, or damage to the applicant if certain conduct of the opposing party is not restrained until such time as a hearing can be held on an application for a preliminary injunction...

(2)

the moving party has a substantial likelihood of success on the merits of his claim...

(3)

issuance of the order will not cause harm to the public interest or other parties.

*James w. Edwards, 683 F.Supp. 157, 159 (E.D.La. 1987)* (citations omitted). "The party that applies for the order has the burden of proving that it is entitled to the relief sought." *Id.*

Plaintiffs, as the moving parties, have utterly failed to carry their burden with regard to all three factors. First, they have not shown that they will suffer irreparable injury if AFC terminates the franchise agreements. In fact, this Court believes that should plaintiffs prevail on the merits, any injury which they suffer as the result of AFC terminating the franchise agreements can be remedied by awarding damages. Second, while plaintiffs argued that defendants' alleged unfair practices precipitated the contractual dispute, their argument falls short of demonstrating a substantial likelihood of success on the merits. Third, and finally, plaintiffs have failed to show that issuing a TRO will not cause harm to other parties, i.e., the defendants in this case. This Court believes that issuing a TRO would harm the defendants; a TRO would bind defendants to the franchise agreements but allow plaintiffs to violate the terms by continuing to withhold payments which admittedly are due.

Accordingly,

It Is Ordered that plaintiffs' application for a temporary restraining order be and is hereby Denied.

**UPDATE-DATE:** June 26, 2008

**Exhibit 2**

3 of 3 DOCUMENTS

Copyright 2008 CCH Incorporated, All Rights Reserved
CCH Business Franchise Guide

Cases, Rulings, New Developments
U.S. District Court

*Business Franchise Guide (CCH) P 10,407*

March 3, 1994 Filed

**Pride Technologies Inc. v. Sun Microsystems Computer Corp.**

United States District Court, Northern District of California.  No. C-94-7001 RMW.  Filed March 3, 1994

**Reseller of Computer Systems Was Not "Franchisee" Under New Jersey Law**

**New Jersey Franchise Practices Act**

   **Choice of Law -- Contractual Provision -- Nonenforcement of Provision -- Overriding Public Policy Concerns. --**

   The New Jersey Franchise Practices Act applied to a California computer manufacturer's termination of a New Jersey dealer/reseller, even though the agreement between the two parties specified that California law would control any disputes arising from the agreement. New Jersey's strong public policy of protecting franchisees within its borders overrode the contractual stipulation.

   **What Is a Franchise? -- Trademark License -- Community of Interest -- Multi-Product Vendor. --**

   A computer services consultant that was a value-added reseller of a manufacturer's computer systems was not a "franchisee" of the manufacturer under the New Jersey Franchise Practices Act, since the consultant did not have a license to use the manufacturer's trademarks and lacked any community of interest with the manufacturer. The consultant's use of the manufacturer's reseller logo in advertising and promotions did not create a license under the Act, particularly where the consultant was a multi-product vendor whose corporate identity was very distinct from the corporate identity of the manufacturer. In any event, the consultant was obligated to promote the manufacturer's products, not its trademarks. No community of interest existed between the two parties because they were not substantially interdependent. The consultant sold many other brands of computers under its own trade name and the majority of its business emphasized a "full spectrum" of computer services. Furthermore, the majority of its manufacturer-related investments were readily transferable to other aspects of its business.

   **Preliminary Relief -- Preservation of Relationship -- Irreparable Harm -- Adequacy of Monetary Damages. --**

   A computer services consultant that operated as a computer reseller for a manufacturer failed to show that it would be irreparably harmed by the manufacturer's termination of the relationship. While the consultant would almost certainly suffer financial loss from termination, such loss or injury could be adequately compensated by monetary damages. Thus, a preliminary injunction preserving the relationship was unwarranted.

**Order Denying Motion for Preliminary Injunction**

**[In full text]**

   WHYTE, D.J .: Plaintiff's motion for a preliminary injunction came before the court on February 18, 1994. Having reviewed the parties' pleadings and considered the oral argument of counsel, the court hereby denies plaintiff's motion for a preliminary injunction.

Copyright 2008 CCH Incorporated,All Rights Reserved

## I. *Background*

This action arises out of defendant Sun Microsystems Computer Corporation's ("Sun") intention to terminate the Indirect Value Added Reseller Agreement ("Agreement") it entered into on April 30, 1993 with plaintiff Pride Technologies Incorporated ("Pride"). Sun is a California corporation in the business of selling and manufacturing computer systems. Pride is a New Jersey corporation in the business of selling computers, software, and computer consulting services. Pride, as a "Value Added Reseller" for many companies, sells different types of computers manufactured and supplied by various companies, including IBM, Hewlett-Packard, and AT&T. For the past three years, Pride has also acted a "Value Added Reseller" of Sun's products, and in that capacity has sold Sun products to companies throughout the greater New York metropolitan area.

Through this motion, plaintiff Pride seeks a preliminary injunction to enjoin defendant Sun from terminating the Agreement on the grounds that doing so will cause irreparable harm to plaintiff's business.

## II. *Choice of Law*

On January 19, 1994, pursuant to *28 U.S.C. § 1404*(a), this action was transferred to this court from the United States District Court for the District of New Jersey. In instances where both the transferor and transferee courts could properly exercise jurisdiction over the parties, the transferee court usually must apply the substantive law, including the choice-of-law rules, of the transferor court. *Ferens v. John Deere Co., 494 U.S. 516, 523 (1990); Consul Ltd. v. Solide Ent., Inc., 802 F.2d 1143, 1146 (9th Cir. 1986); Nelson v. International Paint Co., 716 F.2d 640, 643 (9th Cir. 1983).* However, where, as here, the parties have made a choice of law selection in their agreement, that selection should be followed absent overriding public policy concerns. *Restatement Second of Conflict of Laws*, Section 187(2).

New Jersey has a strong public policy to protect franchisees within its borders. Pride's principal place of business is in New Jersey. Sun's termination of its agreement with Pride will affect New Jersey residents and the goodwill Pride has developed with them. Therefore, the court concludes that, despite the parties' choice of California law, it should apply the New Jersey Franchise Practices Act ("New Jersey Act"), N.J. Stat. Ann. § § 56.10-1 *et seq*., in ruling on plaintiff's motion.

## III. *The New Jersey Act*

In order to invoke the protections of the New Jersey Act, plaintiff must show that its relationship with defendant constitutes a franchise. A franchise relationship exists, notwithstanding whatever terms the contracting parties use to characterize their relationship, when five requirements are satisfied:

1)

plaintiff has a sufficient trademark license;

2)

there is a "community of interest" in the marketing of goods or services between the franchisor and franchisee;

3)

the franchisee maintains a place of business within the state of New Jersey;

4)

sales between the franchisor and franchisee exceeding $ 35,000.00 for the 12 months next preceding the lawsuit; and

5)

more than 20 percent of the franchisee's gross sales are derived from the franchise.

N.J. Stat. § § 56:10-3(a) and 56:10-4.

After reviewing the facts presented, and hearing the arguments of counsel, the court concludes that plaintiff has failed to show that it is "likely" to prevail on the merits, a necessary prerequisite for a preliminary injunction. *Wilson v. Watt, 703 F.2d 395 (9th Cir. 1983)*. Plaintiff has failed to establish that it meets the first two requirements of the New

Copyright 2008 CCH Incorporated,All Rights Reserved

Jersey Act (i.e. the existence of a license and a "community of interest"). Therefore, the business relationship existing between the parties does not constitute a franchise and the New Jersey Act does not apply to these parties' dispute.

### 1) *Plaintiff Does Not Have A Trademark License*

The New Jersey Act provides that no franchisee status attaches unless there is "a license to use a trade name, trade mark, service mark, or related characteristic." N.J. Stat. § 56.10-3a. The agreement in this action states:

[Pride] is granted no right or license to use any Sun Trademarks, except that [Pride] has the right to use the Sun Value Added Reseller logo and to refer to Sun products and technologies by their associated Sun Trademarks in [Pride's] advertising or marketing materials.

The Agreement, P 10. This language indicates that no license was intended to be granted to plaintiff. The "exception" provided by defendant allowing plaintiff to refer to Sun products and technologies by their associated Sun trademarks simply puts in writing that which plaintiff would be free to do even in the absence of any agreement and without violating any trademark rights.

The right to use the Sun Value Added Reseller logo merely describes the relationship between Sun and Pride, i.e., that Pride has the right to resell Sun products with some value added. The use of this logo does not indicate that a trademark license was conferred upon Pride. Moreover, neither Pride's limited display of the logo at its offices nor its use of the logo in some of Pride's advertising leads to a different result.

In *Instructional Systems, Inc. v. Computer Curriculum Corporation, 130 N.J. 324 (1992),* the New Jersey Supreme Court stated that the "[H]allmark of the franchise relationship is the use of another's trade name in such a manner as to create a reasonable belief on the part of the consuming public that there is a connection between the trade name licensor and licensee by which the licensor vouches, as it were, for the activity of the licensee in respect of the subject of trade name." *Id. at 354.* The Court recognized the existence of a license, in part because that case involved an exclusive franchise relationship and there was evidence that some consumers felt that the franchisee and franchisor were, in fact, one and the same company. Interestingly, the court distinguished plaintiff's relationship with defendant as being "different from that of a department store that sells Apple or IBM computers." *Id. at 353.*

The Pride/Sun association is more analogous to a "department store/manufacturer" relationship than to that of an exclusive, "authorized repair/manufacturer" alliance. Pride generates its own product and sells it under its own name. Its use of the reseller logo in its business is more incidental than fundamental.

Several courts have addressed the concept of trademark license in franchise cases and found that mere use of a company's trademark in advertising, or in the provision of services related to a company's products, does not create a license under the New Jersey Act. See *Liberty Sales Associates v. Dow Corning Corp., 816 F. Supp. 1004, 1010 (D.N.J. 1993); Finlay & Associates, Inc. v. Borg-Warner Corporation, 146 N.J. Super. 210, 219 (1976); Colt Industries Inc. v. Fidelco Pump & Compressor Corp., 844 F.2d 117, 120 (3d Cir. 1988);* and *Business Incentives Co. Sony Corp. of America, 397 F. Supp. 63, 67-68 (D.N.J. 1975).*

Plaintiff's heavy reliance on *Instructional Systems* is misplaced. In that case, the franchisee only sold one product -- that of the franchisor. In the cases cited above, and in this action, plaintiff is a multi-product vendor whose reputation, as plaintiff's president has declared, is based not merely on selling computers, but on providing "a suite of other services to its customers, including training, maintenance, consulting and application development services." Russell Declaration, P 3. Thus, plaintiff's corporate identity is very distinct from defendant's identity. Such independence of identity was mentioned in the *Instructional Systems* case as a factor disfavoring a finding of a license. See *Instructional Systems, 130 N.J. at 353-54.*

There is another factor which makes this case more like those where no license was found. Here, plaintiff was only obligated to promote defendant's products, and not its trademarks. The *Liberty Sales* court found this distinction crucial as a duty to promote a product is irrelevant to trademark and license issues. See *Liberty Sales, 816 F. Supp. at 1011.*

The plaintiff is a sophisticated multi-product vendor who entered into an agreement which expressly denied the grant of a trademark license and who uses defendant's mark to indicate that it sells defendant's products. No statutory license has been created.

### 2) *There Is No Community Of Interest Between The Parties*

Copyright 2008 CCH Incorporated, All Rights Reserved

"Community of interest" is an amorphous phrase. Its presence in the New Jersey Act as a requirement for the finding of a franchise relationship virtually guarantees that courts must adjudicate all actions on a case-by-case basis, for whether a "community of interest" exists will depend on the varying facts presented in each case.

The requirement emphasizes the "vulnerability of the alleged franchisee to an unconscionable loss of his tangible and intangible equities." *Neptune T.V. & Appliance Serv., Inc. v. Litton Sys., Inc., 190 N.J. Super. 153, 165 (App. Div. 1983).* Courts look at the nature of the interdependence between the parties. See *Instructional Systems, 130 N.J. at 364.*

Plaintiff has consistently touted itself as an independent computer services consultant. It sells many different brands of computers and all of its sales come under the rubric of its own unique trade name which promises "Pride" technical support and consulting. While plaintiff has successfully sold defendant's products, its dominant image and the majority of its business emphasizes a "full spectrum" of computer products. The majority of Sun-related investments which plaintiff has made are readily transferable to other aspects of plaintiff's business, regardless of whether plaintiff chooses to sell Sun clones, or other UNIX-based products.

The New Jersey Supreme Court has stated that in making its determination of "community of interest," courts should not seek to "reorder the contracts of private parties ... absent a compelling sense of inequality or injustice." *Id. at 373.* While defendant's treatment of plaintiff seems harsh, and possibly unfair, this case involves two large, independent, sophisticated companies, whose business agreement was the result of arm's length negotiations and discussion. The facts do not convey a compelling sense of inequality or injustice and there is no "community of interest" which would justify the reordering of the parties' agreement.

## IV. *Preliminary Injunction*

The issuance of a preliminary injunction is committed to the sound discretion of the district court. *Intel Corp. v. ULSI Technology, Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993).* However, "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Id.* In determining whether the moving party has established their right to a preliminary injunction, the district court must consider:

(1) whether the movant has sufficiently established a reasonable likelihood of success on the merits; (2) whether the movant would suffer irreparable harm if the injunction were not granted; (3) whether the balance of hardships tips in the movant's favor; and (4) the impact, if any, of the injunction on the public interest.

*Id.*

The issue of irreparable harm presents a threshold question. The Supreme Court has held that the fact that adequate compensatory damages will ultimately be available in the ordinary course of litigation weighs heavily against a claim of "irreparable harm." *Sampson v. Murray, 415 U.S. 61, 90 (1974).*

It can be argued that plaintiff's failure to invoke the protection of the New Jersey Act does not, by itself, preclude the issuance of a preliminary injunction. Conceivably, were plaintiff able to meet the traditional common law test for an injunction, the court could provide that remedy. However, the court finds that plaintiff does not meet its burden.

Plaintiff's motion is premised on the loss of money it would suffer and claims it will continue to suffer as a result of its inability to sell Sun products if defendant is allowed to terminate the Agreement. Plaintiff submits the declaration of Leo Russell, its founder, sole shareholder, and president to buttress its claim of irreparable harm. In his declaration, Mr. Russell outlines several investments in equipment and personnel which Pride has made in connection with its relationship with Sun. See Russell Declaration, P P 5, 8-12. For many of these investments, Mr. Russell lists the precise amount of money which his company expended. This delineation demonstrates both the adequacy of, and ability to ascertain, monetary damages.

Without question, the termination of the Agreement will cause financial loss to plaintiff. However, the losses predicted by plaintiff can be compensated by money damages and thus the remedy of injunctive relief is not appropriate.

## V. *Conclusion*

Having considered the papers, submissions, and arguments submitted by the parties, and good cause appearing, It Is Hereby Ordered that plaintiff's motion for a preliminary injunction is Denied.

**UPDATE-DATE:** June 26, 2008

# Exhibit 3

1 of 3 DOCUMENTS

Copyright 2008 CCH Incorporated, All Rights Reserved
CCH Business Franchise Guide

Cases, Rulings, New Developments
U.S. District Court

*Business Franchise Guide (CCH) P 9904*

October 31, 1991 Dated

**Brian A. Zuckerman and Martha W. Zuckerman v. McDonald's Corp.**

U. S. District Court, District of Massachusetts. Civil Action No. 91-30233-F. Dated October 31, 1991

**Injunction Extending Term for Completion of Franchise Sale Denied**

**Common Law -- Modification of Franchise Agreement -- Four-Year Notice of Nonrenewal -- Lack of Consideration -- Refusal to Incorporate Policy into Agreement. --**

A fast food franchisee seeking a preliminary injunction extending the franchise for two years did not show that the franchisor's failure to give four years' notice of nonrenewal breached an effective modification to the franchise agreement. The four-year notice requirement was contained in the franchisor's "rewrite policy," which was issued subsequent to the execution of the franchise. A contention that the policy was enforceable as a modification to the franchise agreement was rejected for several reasons. First, Illinois law requires that contractual modifications be supported by consideration. In this case, it was difficult to see what consideration the franchisee might have offered for this significant modification. Second, the franchisor's submissions strongly suggested that it did not treat the policy as a modification of its franchise agreements. When a group of franchisees requested that the policy be incorporated into their agreements in 1976, the franchisor refused to do so on the ground that it needed to maintain the flexibility of being able to alter the policy at its own discretion. Third, the federal district court in Omaha characterized the policy as a procedure through which the franchisor might extend an offer in the future rather than a present offer that could be accepted by existing franchisees ( P 8870, BUSINESS FRANCHISE GUIDE 1986-1987 New Developments Transfer Binder).

**Common Law -- Implied Duty of Good Faith Performance -- Nonrenewal of Franchise -- Good Cause -- Notice of Decision -- Assistance with Finding Franchise Purchaser. --**

A fast food franchisee seeking a preliminary injunction extending the franchise for two years was not likely to succeed on a claim that the franchisor's refusal to renew the franchise breached its implied duty of good faith performance. The franchisor's letter to the franchisee suggested that the nonrenewal was for good cause and not arbitrary. The franchisee was given adequate notice of the decision, and the franchisor apparently attempted to help the franchisee find a qualified purchaser of the franchise.

**Common Law -- Promissory Estoppel -- Promise of Four-Year Notice of Nonrenewal -- Requirement of Unambiguous Promise -- Reasonableness of Reliance. --**

A fast food franchisee seeking a preliminary injunction extending the franchise for two years in order to complete a franchise sale was not likely to succeed on a claim that the franchisor's promise to provide four years' notice of nonrenewal estopped the franchisor from accomplishing nonrenewal with only two years' notice. To prevail on a promissory estoppel theory, the franchisee would have to prove that (1) the franchisor made an unambiguous promise, (2) the franchisor should have reasonably expected that the promise would induce action or forbearance on the franchisee's part, (3) the promise did induce such action or forbearance, and (4) injustice could be avoided only by enforcement of the promise. It was not clear that the franchisee received an unambiguous promise that it would have four years from the notice of nonrenewal to complete a sale of the franchise. A subsequent promise by the franchisor's regional manager that the franchisee would have "adequate time" was not a promise of four years. Even if the franchisor did make an unambiguous promise of four years, the franchisee's reliance on that promise would be unreasonable. The franchisor's "rewrite

Copyright 2008 CCH Incorporated,All Rights Reserved

policy" explicitly provided that the franchisee may choose the option of selling its franchise if the sale is concluded prior to the expiration of the 20-year franchise agreement. The franchisee apparently did not attempt to meet the deadline for sale of the franchise.

**Preliminary Relief -- Two-Year Extension of Franchise -- Time to Sell Franchise -- Irreparable Harm -- Economic Loss. --**

A fast food franchisee seeking a preliminary injunction extending the franchise for two years in order to complete a franchise sale failed to demonstrate that it would suffer irreparable harm if the injunction were denied. The franchisee claimed that it was entitled to four years in order to locate a qualified purchaser of the franchise and would be economically damaged unless the franchisor provided two more years. However, economic loss alone does not normally rise to the level of irreparable harm that a party must establish to obtain a preliminary injunction. If the franchisee succeeded in proving a breach of contract, damages would be calculable and the franchisor would be capable of paying the award.

## Bench Order

### [In full text]

FREEDMAN, C.J.: Plaintiffs, licensees of McDonald's, seek a preliminary injunction ordering McDonald's to extend plaintiffs' license to operate the McDonald's in Hadley for an additional two years so that plaintiffs may seek a qualified buyer. They argue that they are entitled to this relief because McDonald's has breached its contract with them, and violated an implied contractual duty of good faith performance. Alternatively, plaintiffs rely on a theory of promissory estoppel arguing that McDonald's is bound by the terms of its rewrite policy to give plaintiffs four years notice that their license will not be renewed. In addition, plaintiffs rely on a chapter 93A claim to support their appeal for preliminary relief.

Although the contract between these parties is governed by Illinois law, the issue of whether to grant preliminary relief is governed by the federal law of this circuit. 11 Wright and Miller, § 2943 (1973). The Court should grant a motion for a preliminary injunction when (1) plaintiffs have demonstrated a likelihood of success on the merits; (2) plaintiffs will suffer irreparable harm if an injunction is not granted; (3) the injury plaintiffs will suffer outweighs any harm the injunction will inflict on defendant, and (4) the public interest will not be adversely affected if the injunction is granted. *Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); Planned Parenthood League of Massachusetts v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981).* Of these four factors, the most significant is whether plaintiffs are likely to succeed in their litigation. *Narragansett Indian Tribe, 934 F.2d at 6; Lancor v. Lebanon Housing Authority, 760 F.2d 361, 362 (1st Cir. 1985).* Accordingly, the Court begins by addressing that issue. It should perhaps be stated parenthetically that the following analysis is by no means dispositive of the case. It is simply the Court's best assessment of probable outcome, at a very early stage of this litigation.

### A. *Likelihood of Success on the Merits*

Plaintiffs first argue that the terms of McDonald's rewrite policy, including the commitment to review licenses at the beginning of the seventeenth year, was an enforceable modification of the agreement between the parties. It is undisputed that the contract signed by the parties, which contains a merger clause, makes no reference to the rewrite policy. Plaintiffs contend, however, that the rewrite policy is enforceable as a subsequent modification of the agreement.

For several reasons, this argument appears unconvincing. First, Illinois law appears to require consideration if modifications of existing contracts are to be binding, except in cases of contracts for the sale of goods. *Greenburg v. Mallick Management, Inc., 173 Ill. App. 3d 653, 527 N.E.2d 943, 948 (1988).* It is difficult to see what consideration plaintiffs might have offered for this significant modification to their licensing agreement with McDonald's.

Second, despite plaintiffs' contention to the contrary, defendant's submissions strongly suggest that McDonald's did not treat the rewrite policy as a modification to its license agreements. Specifically, Burton Cohen, Senior Vice President in charge of licensing, states that in 1976, a group of McDonald's licensees requested that the rewrite policy be incorporated into McDonald's licenses. The company declined to do so on the basis that it needed to maintain the flexibility to alter the policy at its own discretion. Mr. Cohen further states that this decision was communicated to all licensees. Thus, plaintiffs, or their predecessors-in-interest, whose license agreement was signed in 1971, were notified that the company viewed the rewrite policy as a non-binding statement of company procedures rather than a binding modification to existing license agreements.

Copyright 2008 CCH Incorporated,All Rights Reserved

In addition, the Court notes that a federal district court in Nebraska has characterized the rewrite policy as "a procedure through which McDonald's may extend an offer in the future" rather than a present offer which might be accepted by existing licensees. *Roseli, Inc. v. McDonald's Corp.,* No. 82-0-674, slip op. at 8 (D. Neb. June 20, 1986), aff'd *822 F.2d 1095 (8th Cir. 1987).*

Also under the heading of breach of contract, plaintiffs argue that defendant breached its implied contractual duty of good faith performance, a duty implied under Illinois law. See, e.g., *Bonfield v. AAMCO Transmissions, Inc., 708 F. Supp. 867, 884-85 (N.D. Ill. 1989),* quoting *Dayan v. McDonald's Corp., 125 Ill. App. 3d 972, 990-91, 466 N.E.2d 958, 972 (1984).* In *Dayan,* the court noted that the termination of a franchise agreement without cause may violate the contractual duty of good faith performance. *Dayan, 466 N.E.2d at 973.* McDonald's December 15, 1989 letter to the Zuckermans suggests that the company's decision not to rewrite the Zuckermans' license was for cause, and therefore not arbitrary. Plaintiffs were given adequate notice of the decision, and McDonald's has apparently attempted to assist the Zuckermans with finding a qualified buyer. It seems unlikely that the Zuckermans will succeed in proving that McDonald's has violated the relatively limited good faith duty imposed by Illinois law.

For these reasons, the Court concludes that plaintiffs have failed to establish that they are likely to prevail on their breach of contract claim.

Alternatively, plaintiffs contend that the rewrite policy is a promise to plaintiffs that they will have four years to find a satisfactory buyer for their Amherst restaurant, a promise reaffirmed by Regional Manager Henry Gonzalez on May 3, 1989, when he wrote to Brian Zuckerman: "You have my commitment that you will receive adequate time to carry out any conditions determined by the committee. That time will be consistent with our policy and procedure as if all the packages were reviewed on schedule."

Illinois and Massachusetts law both recognize the doctrine of promissory estoppel. See *Loranger Constr. Corp. v. E. F. Hauserman Corp., 376 Mass. 757, 384 N.E. 2d 176 (1978); Quake Constr. Inc. v. American Airlines, 141 Ill. 2d 281, 565 N.E. 2d 990 (1990).* The parties essentially agree on their definition of the doctrine. To prevail on this theory, the Zuckermans must prove that McDonald's made them an unambiguous promise, that McDonald's reasonably should have expected that the promise would induce action or forbearance on the Zuckermans' part, that the promise *did* induce such action or forbearance, and that injustice can only be avoided by enforcement of the promise.

As an initial matter, it is not clear that the Zuckermans received an unambiguous promise that they would have four years from the date on which they received McDonald's negative rewrite decision to complete a sale of the Hadley restaurant. A promise of "adequate time" is not a promise of four years. Assuming *arguendo* that they did receive an unambiguous promise to that effect, reliance on that promise would not be reasonable. As defendant points out, the rewrite policy explicitly provides that a licensee may only avail himself of the option to sell his ongoing business if he concludes the sale prior to expiration of his twenty-year license agreement. Plaintiff's license clearly expires on November 15, 1991. In at least one case, the First Circuit Court of Appeals held that reliance was unreasonable where there was a conflict in the content of the communications received from the party making the promise sought to be enforced. *Trifiro v. New York Life Insurance Company, 845 F.2d 30, 33 (1st Cir. 1988).* By December 15, 1989, plaintiffs had received explicit written notification that they must sell their Amherst restaurant by November 15, 1991. They have apparently not attempted to meet this target date.

It is unfortunate for plaintiffs, if true, that a 1991 sale of their restaurant will deprive them of the fair market value of their investment. However, McDonald's cannot be held responsible for this area's economic problems. The fact remains that plaintiffs signed a twenty-year license agreement with no guarantee of an extension, and faced a clearly stated obligation to sell their restaurant by November 15, 1991.

The Court perceives significant possible deficiencies in plaintiffs' breach of contract and promissory estoppel claims. In other words, defendant's conduct is likely within the bounds of the law. Thus, there is not a sufficient likelihood that plaintiffs will succeed on their chapter 93A claims to warrant granting a preliminary injunction.

### B. *Irreparable Harm*

Plaintiffs have also failed to demonstrate that they will suffer irreparable harm if the preliminary injunction they seek is not granted. They have no basis for claiming that they are entitled to a two-year extension of their licensing agreement with McDonald's. Rather, they claim that they were entitled to four years of lead time to locate a qualified buyer for the Hadley McDonald's, and they claim they will be economically damaged because they did not have this four-year notice. "Economic loss alone does not normally rise to the level of irreparable harm which a party must estab-

Copyright 2008 CCH Incorporated,All Rights Reserved

lish to obtain a preliminary injunction." *Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 643, 506 N.E.2d 140, 142 (1987).* If plaintiffs succeed in proving a breach of contract, their damages will be calculable, and McDonald's will be capable of paying the award. See *Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 52 (1st Cir. 1986)* (injunctive relief appropriate where insolvency may prevent collection of damages).

Plaintiffs having failed to make an adequate showing on the two most significant prongs of the *Bellotti* test, the Court need go no further. *Narragansett Indian Tribe, 934 F.2d at 5.*

Accordingly, plaintiff's motion for a preliminary injunction is Denied.

It is So Ordered.

**UPDATE-DATE:** June 26, 2008