

1  DOUGLAS W. DAL CIELO (SBN 157109)
   GREGORY M. GENTILE (SBN 142424)
2  ROPERS, MAJESKI, KOHN & BENTLEY
   50 West San Fernando Street, Suite 1400
3  San Jose, CA 95113
   Telephone:    (408) 287-6262
4  Facsimile:    (408) 918-4501
   ddalcielo@rmkb.com
5  ggentile@rmkb.com

6  Attorneys for Plaintiff
   NORMAN GILBERT
7

8                 UNITED STATES DISTRICT COURT

9         CALIFORNIA NORTHERN DISTRICT (SAN FRANCISCO)

10

11 NORMAN GILBERT,                    CASE NO.  3:08-CV-03043-VRW

12              Plaintiff,            **REPLY TO OPPOSITION TO MOTION
                                      FOR PRELIMINARY INJUNCTION**
13       v.
                                      **Date:    August 7, 2008**
14 FASTSIGNS INTERNATIONAL INC.       **Time:    2:30 p.m.**
   and DOES 1-20, inclusive,          **Judge:   Hon. Vaughn R. Walker**
15
16              Defendants.

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

RCI/5155829.1/BL1

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     THE PARTIES ARE REQUIRED TO ARBITRATE
        THEIR DISPUTE(S)............................................................................ 2

        A.  Under The Franchise Agreement The Resolution Of The
            Dispute(s) Should Be Before The Arbitrator ............................ 2

        B.  All Proceedings In This Matter Must Be Stayed
            Pending Arbirration......................................................................... 6

III.    A PRELIMINARY INJUNCTION IN FAVOR OF GILBERT IS
        APPROPRIATE PENDING ARBITRATION ....................................... 7

        A.  The Standard For Injunctive Relief Under The 9th Circuit
            Favors Gilbert ............................................................................... 7

        B.  There Is A Likelihood That Gilbert Will Prevail On the Merits
            at Arbitration ................................................................................. 8

        C.  The Califoirnia Franchise Act Precludes Termination of the
            Agreement ...................................................................................... 9

        D.  Gilbert Has Established The Requisite Irreparable Harm ................ 11

        E.  Balancing The Hardships Favors Gilbert ......................................... 12

        F.  Gilbert Has No Adequate Remedy At Law ....................................... 13

IV.     CONCLUSION .................................................................................. 14

REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006)................................................................................ 5

*Dean Witter Reynolds, Inc. v. Byrd* (1985) 470 U.S. 213 ................................ 4

*Fleet Tire Service of North Little Rock v. Oliver Rubber Co.* (8th Cir. 1997) 118 F.3d 619 ....................................................................................................... 3

*Intel Corp., v. ULSI Technology Inc.*, 995 F.2d 1566, 1568 Fed. Cir. (1993) ................... 7

*Jones v. New York Guar. & Indem. Co.* (1980) 101 U.S. 622 ........................... 1

*LGS Architects v. Concordia Homes*, 434 F.3d 1150 (9th Cir. 2008). ............... 7

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.* (1983) 460 U.S. 1 ............................................................................................................. 4

*Optinrealbig.com, LLC v. Ironport System*, 323 F. Supp. 2d 1037 (N.D.Cal. 2004) ......... 7

*Preston v. Ferrer* (2008) 128 S. Ct. 978 ......................................................... 4

*Roe v. Anderson*, 134 F.3d 1400 (9th Cir. 1998) ............................................ 7

*Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) ............... 4

*Stuhlbarg International Sales Co. v. John D. Brush & Co., Inc.*, 240 F.3d 832 (9th Cir. 2001) .................................................................................................... 7

*Wagner v. Stratton Oakmont, Inc.* (9th Cir. 1996) 83 F.3d 1046 ..................... 6

## STATE CASES

*Baskin-Robbins Inc., v. TAJ California Inc.*, (2003) WL 22768662  230 U.S. Dist. LEXIS 19943 (C. D. Oct 21. 2003) ............................................................. 5

*Buckhorn v. Saint Judge  Heritage Medical Group* (2004) 121 Cal. App. 4th 1401.......... 3

*JRS Products, Inc., Matsushita Elec. Corp of America* at p. 173.] ................................. 10

*Vianna v. Doctor's Management Co.* (1994) 27 Cal. App. 4th 1186 .................. 3

## FEDERAL STATUTES

9 U.S.C. §2.] ................................................................................................ 4

9 U.S.C. § 3 .................................................................................................. 6

Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq......................................... 4

Federal Arbitration Act (FAA), 9 U.S.C. § 3 et seq......................................... 6

Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1 et seq ................................................ 4

## STATE STATUTES

The California Franchise Relations Act, Cal. Bus. & Prof. Code § 20000, et seq ............. 9

## MISCELLANEOUS

*Pride Technologies Inc. v. Sun Microsystems Comp. Corp., Bus. Fran. Guide
CCH* ¶10, 407 N.D. Cal. 1994 ...................................................................... 5, 6, 13, 14

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

1    Plaintiff NORMAN GILBERT ("GILBERT" or "Plaintiff") hereby submits his Reply to

2  the Opposition of FASTSIGNS INTERNATIONAL INC. ("FASTSIGNS", "FII" or "Defendant")

3  to his Motion for Preliminary Injunction.

## I. INTRODUCTION

5    Defendant is quick to quote the equitable maxim of "He who seeks equity must do

6  equity". However, there is another equitable maxim that is applicable herein: "Equity abhors

7  forfeiture". [*Jones v. New York Guar. & Indem. Co.* (1980) 101 U.S. 622, 628].

8    Should the Court deny this injunction, which was brought to preserve the relationship

9  between the parties pending mandatory binding arbitration, it would allow Defendant to force

10 GILBERT to sell his business at a reduced price to his detriment and force a considerable

11 forfeiture of GILBERT's business' interests.  GILBERT has spent a substantial amount of time as

12 a FASTSIGNS franchisee, building up his business.  (Gilbert Declaration in Support of

13 Temporary Restraining Order ¶¶ 3, 5; Gilbert Supplemental Declaration in Support of

14 Preliminary Injunction ¶ 3).  The result of the Defendant's tactics in terminating his Franchise

15 Agreement and the attendant services will eviscerate GILBERT's franchise.  (Id. ¶¶ 23-32).

16    Further, should the Court deny this injunction, it will allow Defendant to circumvent the

17 arbitration of the dispute since the effect of the denial would be the termination of vital

18 communication services which are the mainstay of GILBERT's business.  Damages will not

19 compensate GILBERT, as FII asserts.  By the time arbitration takes place, the business will be

20 gone and GILBERT's business reputation will be irreparably harmed.  Again, it bears repeating.

21 "Equity abhors forfeiture".

22    The arguments advanced by FII to deny this motion lack merit.  First, FII contends that

23 GILBERT's motion should be denied because (i) he violated his Franchise Agreement, which

24 was legally terminated for cause by FII, and (ii) he has no contractual right to the services he

25 claims.  These issues are irrelevant to this motion since the above are issues for the arbitrator to

26 decide. The parties must arbitrate the dispute(s) that exist between them.  Second, FII contends

27 that GILBERT's showing of irreparable harm is conclusionary and insufficient.  As demonstrated

28 below, and in the Supplemental Declaration of GILBERT, there is clear irreparable harm to

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    GILBERT, providing a legal and equitable basis for this Court to grant injunctive relief.  Third,

2    Defendant contends that the "balance of hardships" favors it, with Defendant claiming that if the

3    preliminary injunction is granted, its own injury outweighs any injury to GILBERT.  In support,

4    Defendant argues that the granting of this injunction would compel FII to continue its ongoing

5    relationship with GILBERT after FII's confidence in their relationship was destroyed by

6    GILBERT's intentionally dishonest acts.  (Opposition, p. 2:2).  This is a disingenuous contention.

7    If the Court balances the hardships, it must conclude that it is GILBERT who will suffer the

8    harm, not FII.  GILBERT's hardship is tangible and concrete.  He will forfeit his business, or be

9    forced to sell his business at a reduced price.  There is no tangible hardship to FII since it

10   continues to receive royalties from GILBERT pursuant to the Agreement and GILBERT's

11   franchise is very successful.  In short, all of the reasons advanced by FII to deny this request for

12   injunctive relief lack merit.  (Gilbert Supplemental Declaration, Exhibit C).

13   **II.  THE PARTIES ARE REQUIRED TO ARBITRATE THEIR DISPUTE(S)**

14   A.    **Under The Franchise Agreement The Resolution Of The Dispute(s) Should Be**
15         **Before The Arbitrator.**

16   The Franchise Agreement reads at paragraph 24, as follows:

17          Franchisor and Franchisee agree that, subject to paragraph B below,
            any claim, controversy or dispute between Franchisor . . . . and
18          Franchisee . . . **arising out of or relating to**: (1) **Franchisee's
            operation of the Center under this agreement**; (2) this agreement
19          or any other agreement between Franchisee and Franchisor; (3) the
            relationship created by this agreement; (4) the validity of this
20          agreement or any other agreement between Franchisee and
            Franchisor; or (5) any System standard relating to the establishment
21          or operation of the Center, **will be submitted for binding
            arbitration** before one arbitrator in accordance with the then-
22          current commercial rules of the American Arbitration Association.
            (Emphasis added).

23   Significantly, under paragraph 24D:

24          All matters relating to arbitration will be governed by the Federal
25          Arbitration Act.

26   Notably, it was the Defendant that drafted the Franchise Agreement and its associated

27   paragraphs.  Just as with any contract of adhesion, it was provided to the franchisee GILBERT on

28   a take it or leave it basis.  Its terms should be construed liberally and in favor of the franchisee,

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

1  GILBERT. FII is asking this Court, in effect, to circumvent the terms of the Franchise

2  Agreement by resolving the contractual dispute as to GILBERT's alleged violation under the

3  Franchise Agreement. The underlying dispute clearly relates to GILBERT's operation of the

4  franchise center. Unquestionably, any dispute arising out of or relating to GILBERT's "operation

5  of the Center" under the Agreement must be submitted to binding arbitration. There is such a

6  dispute here with GILBERT claiming that FII is wrongfully seeking to terminate electronic

7  services because of a dispute over a single sale and a royalty reduction. This is effectively a

8  termination of his Franchise Agreement and is an issue for the arbitrator pursuant to the

9  Agreement. It should be the arbitrator who decides whether the underlying transaction giving rise

10  to the dispute requiring arbitration constituted a sale under the agreement. It should be the

11  arbitrator who decides if a royalty reduction should apply. It should be the arbitrator who decides

12  if a single isolated incident constitutes a material breach under the Agreement justifying whether

13  Defendant can terminate GILBERT's franchise. And it should be the arbitrator who should decide

14  the propriety of Defendant's termination of the electronic services.

15      GILBERT has timely demanded arbitration and, notably, prior to seeking injunctive

16  relief. (Gilbert Declaration in Support of Temporary Restraining Order ¶ 9). The scope of the

17  arbitration provisions of the Agreement which was drafted by Defendant, and presented to

18  GILBERT, are broad enough to include the above issues (i.e., whether the Agreement has been

19  violated). Paragraph 24 of the Agreement uses the "broad form" language providing that "any

20  controversy, claim or dispute arising out of or relating to this Agreement . . . will be submitted

21  for binding arbitration . . . ." This language has been interpreted by the courts as broad enough

22  to cover virtually any claim in any way related to the subject matter of the agreement. [*Fleet

23  Tire Service of North Little Rock v. Oliver Rubber Co.* (8th Cir. 1997) 118 F. 3rd 619, 621]

24  (referring to similar language as follows: "Such a provision constitutes the broadest language the

25  parties could reasonably use to subject their disputes to that form of settlement, including

26  collateral disputes that relate to the agreement containing the clause.").] For example, in *Vianna

27  v. Doctor's Management Co.* (1994) 27 Cal.App.4th 1186, 1189, similar language was interpreted

28  to include tort claims related to the employment relationship. [See also, *Buckhorn v. Saint Judge*

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    *Heritage Medical Group* (2004) 121 Cal.App.4[th] 1401, 1406-1407 (broad form arbitration

2    language included tort claims for defamation and interference with prospective business

3    advantage based on events occurring **after** the employee's termination.).]

4         Further, Paragraph 24D of the Agreement states that the Federal Arbitration Act ("FAA")

5    applies.  The FAA provides that contractual agreements to arbitrate are "valid, irrevocable, and

6    enforceable, save upon such grounds that exist at law or in equity for the revocation of any

7    contract." [9 U.S.C. §2.]  The primary congressional purpose of the FAA is "to insure judicial

8    enforcement of privately made agreements to arbitrate." [*Dean Witter Reynolds, Inc. v. Byrd*

9    (1985) 470 U.S. 213, 219.]  The FAA "leaves no place for the exercise of discretion by a district

10   court, but instead mandates that district courts shall direct the parties to proceed to arbitration on

11   issues as to which an arbitration agreement has been signed." [*Id.* at 218.]

12        The FAA provides for enforcement of arbitration provisions in any contract "evidencing

13   a transaction involving commerce." [9 U.S.C. §2.]  The United States Supreme Court has

14   interpreted the FAA as creating a liberal federal policy favoring arbitration agreements,

15   notwithstanding any state substantive or procedural policies to the contrary. [*Moses H. Cone*

16   *Memorial Hospital v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24.]  The FAA establishes

17   that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be

18   resolved in favor of arbitration, whether the problem at hand is the construction of the contract

19   language, or an allegation of waiver, delay, or a like defense to arbitrability. [*Id.* at 25.]

20        A recent United States Supreme Court case makes this clear.

21        In *Preston v. Ferrer* (2008) 128 S. Ct. 978; 169 L. Ed. 2d 917, the United States Supreme

22   Court stated that:

23              When parties agree to arbitrate all questions arising under a
24              contract, the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq,
                supersedes state laws lodging primary jurisdiction in another forum,
25              whether judicial or administrative. ).... As this Court recognized in
                *Southland Corp.* v. *Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed.
26              2d 1 (1984), the Federal Arbitration Act (FAA or Act), 9 U.S.C. § 1
                *et seq.* (2000 ed. and Supp. V), establishes a national policy
27              favoring arbitration when the parties contract for that mode of
                dispute resolution. The Act, which rests on Congress' authority
28              under the Commerce Clause, supplies not simply a procedural
                framework applicable in federal courts; it also calls for the

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

application, in state as well as federal courts, of federal substantive law regarding arbitration. (465 U.S., at 16). More recently, in *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006), the Court clarified that, when parties agree to arbitrate all disputes arising under their contract, questions concerning the validity of the entire contract are to be resolved by the arbitrator in the first instance, not by a federal or state court. (*Id.* at p. 981).

As the Supreme Court in *Preston* further determined, attacks on the validity of an entire contract, as distinct from attacks on the arbitration clause are within the arbitrator's ken. In short, the arbitrator is charged with the responsibility of deciding all rights and obligations under the Agreement. [*Id.* at pp. 983-984.]

Respectfully, a determination by this Court as to the propriety of Defendant's termination of services of GILBERT's franchise effectively rules on the merits and invades the arbitrator's province.

It will result in a termination of the franchise before arbitration. Notably, the location cannot be resurrected if GILBERT prevails at the arbitration or if GILBERT is allowed to keep his franchise. In summary, any claim by Defendant that GILBERT has violated his Agreement, that the "termination" of the Agreement was proper and that GILBERT has no contractual right to the services should rightfully be before the arbitrator. Likewise, any claim as to propriety of the termination of the electronic service rightfully belongs before the arbitrator. It should be the arbitrator who decides if there was a material breach of the Agreement for not paying the royalty fee justifying termination and whether the termination of the services was proper. It should also within the arbitrator province to decide whether GILBERT's actions were done in good faith.

FII suggests that termination of the Franchise Agreement was proper (Opposition p. 7: 4-10) and cites the case of *Baskin-Robbins Inc.*, v. *TAJ California Inc.*, (2003 WL 22768662 230 U.S. Dist LEXIS 19943 (C. D. Oct 21. 2003). Defendant suggests that this Court has authority to terminate the franchise and/or to order termination of the services. However the *Baskin-Robbins* case is distinguishable on its face since the District Court in that case had the jurisdiction to actually decide all issues involved and conducted a trial on the merits. Moreover in the *Pride Technologies Inc. v. Sun Microsystems Comp. Corp.*, Bus. Fran. Guide CCH ¶10, 407 N.D. Cal

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

1   1994], cited in Defendant's Appendix, the District Court for the Northern District of California

2   was deciding the propriety of the actual termination of a franchise. In this case, the arbitrator

3   must make this decision, not the Court.

4   It bears repeating that GILBERT, through counsel demanded arbitration on June 2, 2008

5   (Exhibit B to the Declaration of Gregory M. Gentile in Support of Ex-parte Application for

6   Temporary Restraining Order and Order to Show Cause re Preliminary Injunction). Defendant

7   subsequently acknowledged receipt of this letter. However, instead of diligently proceeding in

8   this regard, Defendant proceeded to terminate his services on June 9, forcing GILBERT to seek

9   Court intervention. Further, rather than preserving the status quo pending arbitration, Defendant

10  is now seeking to terminate the franchise prior to submitting this matter to arbitration, and

11  appears intent upon filing its own motion for a preliminary injunction. (Opposition p. 2: 4-7).

12  Such conduct is not in good faith and is calculated to increase GILBERT's litigation costs before

13  the merits of the dispute are decided by the arbitrator.   GILBERT hereby requests the Court to

14  issue a stay of this matter, pending arbitration.

15  **B.    All Proceedings In This Matter Must Be Stayed Pending Arbitration.**

16  Moreover, the FAA provides that if the court where the action is pending is satisfied that

17  the issue involved in such suit or proceeding is referable to arbitration . . . . [the court] shall on

18  application of one of the parties stay the trial of the action until such arbitration has been had in

19  accordance with the terms of the agreement, providing the applicant for the stay is not in default

20  in proceeding with such arbitration. [9 U.S.C. § 3. (Emphasis added).]

21  Section 3 of the Federal Arbitration Act provides as follows:

22          If any suit or proceeding be brought in any of the courts of the
            United States upon any issue referable to arbitration under an
23          agreement in writing for such arbitration, the court in which such
            suit is pending, upon being satisfied that the issue involved in such
24          suit or proceeding is referable to arbitration under such an
            agreement, **shall** on application of one of the parties' stay the trial
25          of the action until such arbitration has been had in accordance with
            the terms of the agreement, providing the applicant for the stay is
26          not in default in proceeding with such arbitration.

27  Consequently, the FAA requires the court to stay the action pending arbitration. [See

28  *Wagner v. Stratton Oakmont, Inc.* (9th Cir. 1996) 83 F. 3rd 1046, 1048.] GILBERT hereby

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    requests that such a stay be imposed.

2    ### III.  A PRELIMINARY INJUNCTION IN FAVOR OF
3    ### GILBERT IS APPROPRIATE PENDING ARBITRATION

4    **A.**    **The Standard For Injunctive Relief Under The 9th Circuit Favors Gilbert.**

5         Federal Rule of Civil Procedure 65 permits the issuance of a preliminary injunction to

6    preserve the positions of the parties until a full trial can be conducted. [*LGS Architects v.*

7    *Concordia Homes,* 434 F. 3rd 1150, 1158 (9th Cir. 2008).]  It is settled that the issuance of a

8    preliminary injunction is committed to the sound discretion of the Court.  [*Intel Corp., v. ULSI*

9    *Technology Inc.,* 995 F.2d 1566, 1568 Fed. Cir. 1993].  In the 9th Circuit, a preliminary injunction

10   is appropriate where plaintiff demonstrates either: (1) a likelihood of success on the merits and

11   the possibility of irreparable injury; **or** (2) that serious questions going to the merits were raised

12   and the balance of hardships tips sharply in their favor.  Further, the District Court must also

13   consider whether the public interest favors issuance of the injunction, if such is applicable.

14        When a party is seeking a preliminary injunction, he or she must show either:  (1) a

15   combination of probable success on the merits and the possibility of irreparable injury, or (2) that

16   serious questions are raised and the balance of hardships tips sharply in favor of the moving party.

17   These standards are not separate tests but the outer reaches of a single continuum. [(*Stuhlbarg*

18   *Int'l Sales Co. v. John D. Brush & Co., Inc.*, 240 F3d. 832, 839-840 (9th Cir. 2001)].  These two

19   formulations represent two points on a sliding scale in which the required degree of irreparable

20   harm increases as the probability of success decreases. [(*Roe v. Anderson* 134 F3d 1400, 1402 (9th

21   Cir. 1998)]. An irreparable harm is one that cannot be redressed by a legal or equitable remedy

22   following trial. [*Optinrealbig.com, LLC v. Ironport Sys.*, 323 F. Supp 2d 1037, 1050 (N.D.Cal.

23   2004)].

24        GILBERT has met the standard.  As set forth below, there is a likelihood that GILBERT

25   will succeed on the merits.  Moreover, as demonstrated, there are serious questions raised with

26   respect to the parties dispute (which must be resolved by arbitration) and clearly the balance of

27   hardships favor GILBERT, and not FII.  Combined with the salutary purpose of a preliminary

28   injunction, the equities favor GILBERT.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   **B.    There Is A Likelihood That Gilbert Will Prevail On The Merits At Arbitration.**

2         Defendant's Opposition suggests that there is no possibility of the likelihood of success on

3   the merits. (Opposition at p.6: 12-17). It claims that GILBERT's violation of the Agreement

4   gave it the right to terminate the franchise. (As stated above, this is an issue for the arbitrator).

5   FII points to the declaration of Shane Beard and the e-mail dated July 14, 2008 from GILBERT to

6   various FII franchisees. FII argues that this e-mail contains damming admissions made by

7   GILBERT and that the Court should accept the statements contained therein as *prima facie*

8   evidence of GILBERT's "intentional failure" to report and pay royalties, thereby justifying

9   termination. (Opposition p. 6:20-23 et. seq.).

10        However, this e-mail must be placed within the context in which it was written.

11  GILBERT's statements were made in hindsight of the events that had taken place and after he had

12  the benefit of reviewing the relevant parts of the Franchise Agreement. (Gilbert Supplemental

13  Declaration ¶ 14). As stated in the e-mail, GILBERT wishes to maintain his franchise and in an

14  attempt to do so, he was reaching out to fellow franchisees to intervene on his behalf with the

15  franchisor with the expectation that the e-mail would be viewed as such by the franchisor.

16  GILBERT knew at the time that if he sent the e-mail to any number of franchisees that it would

17  ultimately find its way to FII. (Gilbert Supplemental Declaration ¶ 14). In summary, the use of

18  the terms "illegal" and "inappropriate" by GILBERT (a layperson) must be viewed in the context

19  in which the e-mail was written. GILBERT wrote the e-mail in hindsight after reviewing the

20  relevant paragraphs in the Agreement. Irrespective of the statements made by GILBERT, it will

21  be up to the Arbitrator to determine, **contemporaneous to the events giving rise to the claimed**

22  **breach,** if there was a material breach of the contract justifying termination. Thus, any claim by

23  FII that the statements made by GILBERT in the e-mail are determinative and provided FII with

24  the justification for the termination of the franchise is clearly inappropriate. It bears emphasis

25  that the arbitrator will need to make this decision, applying applicable law and after hearing

26  evidence contemporaneous to the events. There is a strong likelihood that an arbitrator will find

27  that GILBERT's actions were not a material breach of the Franchise Agreement, for several well-

28  founded reasons, set forth below. Moreover, there are serious questions going to the merits raised

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    by GILBERT, and the balance of hardships tips sharply in his favor.

2    **C.    The California Franchise Act Precludes Termination Of The Agreement.**

3        The California Franchise Relations Act, Cal. Bus. & Prof. Code § 20000, et seq. (CFRA)

4    precludes termination of a franchise under the circumstances of this case.

5        The CFRA applies to the franchise, notwithstanding any contrary choice of law provision,

6    based on the CFRA anti-waiver language. Section 20010 of the CFRA provides that, "Any

7    condition, stipulation or provision purporting to bind any person to waive compliance with this

8    law is contrary to public policy and void." Moreover, Section 20015 provides that: "The

9    provisions of this chapter apply to any franchise where either the franchisee is domiciled in this

10   state or the franchised business is or has been operated in this state." Clearly, the provisions of

11   the CFRA should be liberally construed for the benefit of a franchisee for whom the protections

12   of the CFRA were initially implemented. [See *JRS Products, Inc., Matsushita Elec. Corp of*

13   *America* (2004) 115 CA 4th 168, 174].

14       Significantly, Business and Professions Code § 20020 provides as follows:

15           Except as otherwise provided by this chapter, no franchisor may
             terminate a franchise prior to the expiration of its term, except for
16           good cause. Good cause shall include, but not be limited to, the
             failure of the franchisee to comply with any lawful requirement of
17           the Franchise Agreement after being given notice thereof and a
             reasonable opportunity, which in no event need be more than **30**
18           **days, to cure the failure.** (See Id., Emphasis added)

19       Defendant initially provided written notice of GILBERT's failure to pay royalties in its

20   letter dated May 19, 2008 (the written "Notice of Default"). (Gilbert Supplemental Declaration ¶

21   ¶4, Exhibit A). However, even prior to GILBERT's receipt of that Notice of Default, GILBERT

22   had attempted to "cure" the default through his tender of the royalty payments pursuant to his

23   letter dated May 14, 2008. (Gilbert Supplemental Declaration ¶ 8, Exhibit B). Yet by its letter

24   dated May 27, 2008 Defendant purports to have conditionally terminated the franchise. (Lane

25   Declaration, Opposition to Motion to Remand, Exhibit A). "Notice of Termination".

26   Significantly, this letter was issued **less than 30 days** after the date of the Notice of Default of

27   May 19. This action by Defendant is an independent violation of the CFRA's express provisions

28   allowing the franchisee the opportunity to cure the asserted default. This cannot go unnoticed and

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

1    goes directly to the merits of GILBERT's claim that Defendant's termination of the Franchise

2    Agreement was not in good faith and its stated rationale pre-textual.

3        Notably the non-payment of the audit expenses at that time was a function of Defendant's

4    failure to provide GILBERT with the documentation for its claimed audit expenses, despite

5    GILBERT's reasonable request for such documentation. (Gilbert Supplemental Declaration ¶

6    11). To date, FII **has not** provided GILBERT with the requested documentation, despite

7    GILBERT's request.

8        Defendant's failure to adhere to the above statute and to provide documentation was not in

9    good faith and there was no good cause for its failure to do so. At arbitration, GILBERT will

10   contend that FII was without "good cause" to terminate the franchise and that FII exercised bad

11   faith under the Agreement. The interpretation of the statute and its applicability herein present

12   significant questions of law ripe for litigation.

13       Moreover, as set forth in the Supplemental Declaration of GILBERT, FII's stated reason

14   for termination **is not** the real reason for its "termination". The real reasons for termination are

15   that: (1) GILBERT called out FII's management team as incompetent; and (2) FII would like to

16   see the franchise transferred to a more favored and compatible franchisee at a discount price – or

17   for free to the clear detriment of GILBERT. (Gilbert Supplemental Declaration ¶ 15).

18   Defendant's failure to provide the requested documentation is clear evidence that Defendant's

19   rationales seeking to terminate the franchise are pre-textual and do not constitute good cause.

20   They are clearly a violation of the covenant of good faith and fair dealing.

21       Significantly, Defendant argues in its Opposition that it can terminate the services with or

22   without cause (Opposition: p. 4: 7-15). This is untrue. There is law that a franchisor's clause in a

23   franchise agreement purportedly allowing it to terminate a franchise without cause is a violation

24   of the California Franchise Relations Act. [See *JRS Products, Inc., Matsushita Elec. Corp of*

25   *America* (2004) 115 CA 4th 168]. "The Act prohibits a franchisor from terminating a franchise

26   without good cause and requires the franchisor to give a franchisee notice to cure any

27   transgressions" (*Id.* at. p. 173). While Defendant may argue that its contract and stated policies

28   relate to services only, this is a distinction without a difference in this case since termination of

RCI/5155829.1/BL1                    10                    Case No. 3:08-CV-03043-VRW

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1   those services are tantamount to the termination of the Franchise Agreement and will be putting

2   him out of business.  (Gilbert Supplemental Declaration ¶ 30).  Again, this is an issue for the

3   arbitrator.

4   **D.    Gilbert Has Established The Requisite Irreparable Harm.**

5          FII argues that GILBERT has failed to establish irreparable injury.  In support of his

6   motion and attached to this Reply is GILBERT's Supplemental Declaration which provides

7   further evidence of GILBERT's irreparable injuries.  As set forth therein, GILBERT clearly

8   provides the requisite evidence that the services that FII seeks to terminate are vital to the

9   operation of his business and the termination of the same will have an irreversible effect on him

10  and his employees.  GILBERT's Supplemental Declaration provides his own estimation as to

11  how the termination of those services will affect him economically.  (Supplemental Declaration

12  of GILBERT ¶¶ 20-31).

13         GILBERT accurately states that he is precluded by contract from providing his own

14  electronic services and must rely exclusively on FASTSIGNS for these services.  (If he were to

15  provide his own electronic services, it would give FASTSIGNS a further excuse to seek

16  termination).  For instance, the subject electronic services are vital to customer satisfaction and to

17  the financial health of the business and the business could not survive long on just retail walk-in

18  customers since a majority of new customers find the business on the Internet and engage it

19  electronically.  Loss of electronic services would prevent potential customers from even finding

20  out about the business, its capabilities, how to contact it and to obtain quotes.  Termination would

21  restrict GILBERT's ability to collect revenue from customers, would interfere with the ability to

22  locate and interact with vendors and wholesalers and would impact business relationships.

23  Without these services, GILBERT's sales are affected, continuity of customers are impacted and

24  good will of the business and GILBERT's reputation as a vendor in this service-oriented business

25  cannot be maintained.  As GILBERT states, the termination of the services is akin to the

26  termination of the business itself since GILBERT's business stops dead in its tracks; and notably,

27  there is no opportunity to recover the damages caused to him in that the business cannot be

28  resuscitated.  (Supplemental Declaration of GILBERT, ¶¶ 22-28).

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1    Moreover, FII's actions also have had a detrimental effect on the employees of the

2    business and this directly affects its operation.  The employees count on their jobs and are aware

3    of the dispute between GILBERT and FII.  They are naturally concerned since the termination of

4    services will in effect be a termination of the franchise, which will have repercussions on them.

5    The litigation and the constant threats from FASTSIGNS are a distraction to them, causing them

6    undue anxiety and loss of productivity, all to the detriment of the business.  (Gilbert Supplemental

7    Declaration ¶ 18-19).  This is also an intangible hardship that cannot be compensated monetarily.

8    **E.    Balancing The Hardships Favors Gilbert.**

9    In balancing the hardships there should be no question as to where the balance tips.  FII's

10    lone contention in this regard is that the granting of this injunction would compel it to continue its

11    ongoing relationship with GILBERT after its confidence in the relationship was destroyed by

12    GILBERT's intentionally dishonest acts.  (Opposition p. p. 2:2).  As further stated by Defendant:

13    "The parties trust and confidence have been destroyed by Gilbert's intentional concealment of a

14    significant sale and continued failure to pay resulting royalties and audit fees."  (Opposition p.

15    11:14-16).

16    It taxes credulity how this can be an actual hardship for FII.  As stated in GILBERT's

17    Supplemental Declaration, FII continues to receive royalty payments from GILBERT, who

18    submitted payment on June 30, 2008 of all royalties and fees due FASTSIGNS for all other May

19    sales in the aggregate amount of $5,663.68.  FASTSIGNS cashed the checks even though

20    GILBERT was supposedly terminated as a franchisee.  GILBERT also submitted a payment of all

21    royalties and fees due FII for sales for the month of June, in the aggregate amount of $5,622.12,

22    and assumes that Defendant will cash these checks, as well.  Thus, despite the "dispute" with FII,

23    GILBERT continues to comply with the Franchise Agreement and the obligations thereunder.  He

24    wishes to remain a franchisee and FII is still receiving royalty payments from GILBERT.  And as

25    GILBERT states, he will continue to pay royalties and fees when due since he wishes to remain a

26    franchisee in good standing with FASTSIGNS.  (Gilbert Supplemental Declaration ¶¶ 9, 10, 12).

27    Given this evidence, it is hard to see just where the hardship is for FII.  If the Court

28    balances this asserted "hardship" with that of GILBERT, it must conclude that it is GILBERT

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1  who will suffer the harm, not FII. GILBERT's hardship is real, concrete and not conjured. He

2  will forfeit his business or be forced to sell his business at a reduced price. GILBERT will not be

3  able to recover from such an event. (Gilbert Supplemental Declaration ¶¶ 30, 32). On the other

4  hand, there is no **tangible hardship** to FII since it continues to receive royalties from GILBERT

5  pursuant to the Agreement. Moreover, the express terms of Business and Professions Code

6  §20021(g) provides that FII may terminate GILBERT without further opportunity to cure should

7  it be alleged that he failed to pay a royalty. The statute provides, in part, that a franchisee is

8  subject to immediate termination if "the franchisee repeatedly fails to comply with one or more

9  requirements of the franchise, whether or not corrected after notice". Thus, there is no tangible

10  harm to FII, which has the benefit of an additional statutory safeguard in the event of a

11  subsequent failure to pay a royalty. Given GILBERT's sincere desire to remain in good standing

12  with FII, there is no harm to FII while there is irreparable harm to GILBERT.

13  **F.    Gilbert's Has No Adequate Remedy At Law.**

14          FII asserts that GILBERT is not entitled to injunctive relief because damages are an

15  adequate remedy for termination of a franchise. FII is incorrect. It cannot be overlooked that

16  Defendant's actions are imposing on GILBERT a forfeiture of the business and the business's

17  value. This is damage that cannot be recovered in arbitration since by the time the matter is

18  arbitrated, GILBERT's business will be gone. Further, under the CFRA there is only a limited

19  remedy for wrongful termination (i.e., repurchase of a franchisee's inventory under Section

20  20035). Although GILBERT may claim a breach of contract and arguably could recover

21  damages from FII, this would not be the same as re-instatement of the business. As such,

22  GILBERT is without an adequate remedy at law and money damages will not compensate

23  GILBERT. Clearly, injunctive relief pending arbitration is all the more appropriate in this case

24  where there is immediate and irreparable injury, which includes the evisceration of the business

25  and the loss of employees. Unlike the cases cited by Defendant and set forth in its Appendix,

26  which were premised on the loss of money [e.g., *Pride Technologies Inc. v. Sun Microsystems*

27  *Comp. Corp., Bus. Fran. Guide CCH* ¶10, 407 N.D. Cal 1994], GILBERT's loss will be that of a

28  business that he has built up for the past six years. Further, intangibles such as the loss of the

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Jose

1 | business phone numbers and business location are also forfeitures that cannot be compensated.

2 | Likewise, is GILBERT's business reputation with the many customers and vendors, which he has

3 | developed over the years.  Contract damages cannot make GILBERT whole.  Denial of the

4 | injunction will allow Defendant to terminate necessary electronic service, which will cripple

5 | GILBERT's ability to maintain a presence in the market and the necessary continuity with

6 | customers and vendors.  It will injure his reputation and monetary damages cannot repair

7 | damages to a person's reputation.  Defendant will no doubt use an order denying the injunction to

8 | force GILBERT to sell his franchise at under the market value.  Contract damages, which appear

9 | to the exclusive remedy for breach of a Franchise Agreement, will not compensate GILBERT for

10 | this loss.  [See *JRS Products, Inc., Matsushita Elec. Corp of America* at p. 173.]  As set forth

11 | above, GILBERT stands to suffer intangible harms as well.

## IV.  CONCLUSION

One purpose of injunctive relief (as in this case) is to preserve the status quo.  Notably, the Defendant drafted the Franchise Agreement.  Its terms should be construed liberally and in favor of the franchisee, GILBERT.  The obvious intent of including a right to seek injunctive relief in the Agreement when there is also a right to arbitrate is to preserve the status quo pending arbitration.  The dispute must be decided by binding arbitration and the purpose of Paragraph 24 would be frustrated if this Court denies this motion and the status quo is not preserved.  The equities herein favor GILBERT.  He has a reasonable likelihood of prevailing on the merits at arbitration and has also demonstrated the requisite imminent harm.  In balancing the equities, this Court must conclude that it is GILBERT, not FASTSIGNS, who will suffer the imminent injury.  This Court, sitting in equity, should prevent the forfeiture which Defendant is now seeking.

DATED:  July 24, 2008                    ROPERS, MAJESKI, KOHN & BENTLEY


By: _____
     DOUGLAS W. DAL CIELO
     GREGORY M. GENTILE
     Attorneys for Plaintiff
     NORMAN GILBERT

RCI/5155829.1/BL1

14

Case No. 3:08-CV-03043-VRW

**REPLY TO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**