1  JEFFREY M. HAMERLING (Bar No. 91532)
   ERIN FRAZOR (Bar No. 251324)
2  DLA PIPER US LLP
   153 Townsend Street, Suite 800
3  San Francisco, CA  94107-1957
   Tel:  415.836.2500
4  Fax:  415.836.2501

5  Attorneys for Defendant
   FASTSIGNS INTERNATIONAL, INC.

6

7

8               IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11 | NORMAN GILBERT,                          | Case No. CV 08-03043 VRW
12 |     Plaintiff,                           |
                                              | **AMENDED ANSWER OF DEFENDANT
13 | v.                                       | FASTSIGNS INTERNATIONAL, INC.
                                              | TO COMPLAINT FOR INJUNCTIVE
14 | FASTSIGNS INTERNATIONAL, INC. and        | AND DECLARATORY RELIEF AND
   | DOES 1-20, inclusive,                    | AMENDED COUNTERCLAIM FOR
15 |                                          | PRELIMINARY INJUNCTIVE RELIEF
   |     Defendants.                          | AND DECLARATORY RELIEF**
16 |                                          |
17 |                                          |
18 | FASTSIGNS INTERNATIONAL, INC., a         |
   | Texas corporation,                       |
19 |                                          |
   |     Counterclaimant,                     |
20 |                                          |
   | v.                                       |
21 |                                          |
   | NORMAN GILBERT,                          |
22 |                                          |
   |     Counterdefendant.                    |
23

24       Defendant FASTSIGNS INTERNATIONAL, INC. ("FII"), hereby answers the Complaint

25 for Injunctive and Declaratory Relief ("Complaint") filed by Plaintiff NORMAN GILBERT

26 ("Gilbert") as follows:

27

28

## ANSWER TO ALLEGATIONS

## GENERAL ALLEGATIONS

- In response to Paragraph 1 of the Complaint, FII admits that Gilbert is an individual residing in California. FII is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained therein, and on that basis denies such allegations.

- In response to Paragraph 2 of the Complaint, FII admits that it is a corporation organized and existing under the laws of the State of Texas and that it entered into a FASTSIGNS International, Inc. Franchise Agreement ("Franchise Agreement") with Gilbert on November 12, 2001 by and between FII as Franchisor and Gilbert as Franchisee.

- In response to Paragraph 3 of the Complaint, FII is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and on that basis denies each and every allegation therein.

- In response to Paragraph 4 of the Complaint, FII is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and on that basis denies each and every allegation therein.

## RELEVANT ALLEGATIONS

- In response to Paragraph 5 of the Complaint, FII admits that it entered into a Franchise Agreement with Gilbert on November 12, 2001 whereby Gilbert was granted the right to develop and operate a FASTSIGNS Center ("Center"), but that said Franchise Agreement was transferred by Gilbert to Mid-Peninsula Marquee, Inc. (Gilbert and Mid-Peninsula are collectively referred to herein as "Gilbert"). Except as so admitted, FII denies each and every allegation contained in Paragraph 5.

- In response to Paragraph 6 of the Complaint, FII is without knowledge or information sufficient to form a belief as to the truth of the allegation contained therein.

- In response to Paragraph 7 of the Complaint, FII admits that Gilbert operated a franchise under the Franchise Agreement. Except as so admitted, FII denies each and every allegation contained in Paragraph 7.

- In response to Paragraph 8 of the Complaint, FII admits that it conducted an audit of Gilbert's store in April 2008 and that it determined Gilbert to be in violation of the Franchise Agreement due to non-compliance with sections 16.B. (14) and (15). FII admits that Gilbert demanded binding arbitration in writing under the Franchise Agreement and that a dispute arose between the parties. Except as so admitted, FII denies each and every allegation contained in Paragraph 8.

- In response to Paragraph 9 of the Complaint, FII denies each and every allegation contained therein.

- In response to Paragraph 10 of the Complaint, FII alleges that the terms of the Franchise Agreement speak for themselves.

- In response to Paragraph 11 of the Complaint, FII admits that Gilbert demanded binding arbitration in writing under the Franchise Agreement. FII asserts that the remaining allegations of Paragraph 11 are legal conclusions to which no responsive pleading is required. To the extent a response is required, and except as so admitted, FII denies each and every allegation contained in Paragraph 11.

- In response to Paragraph 12 of the Complaint, FII denies it engaged in unlawful behavior and asserts that the remaining allegations contained therein are legal conclusions to which no responsive pleading is required. To the extent a response is required, FII denies each and every allegation contained therein.

## ANSWER TO CAUSES OF ACTION

### FIRST CAUSE OF ACTION

(Injunctive Relief)

- In response to Paragraph 13 of the Complaint, the statement in Paragraph 13 requires no responsive pleading. To the extent a response is required, FII incorporates by reference its responses to Paragraphs 1 through 12 of the Complaint.

- In response to Paragraph 14 of the Complaint, the allegations contained therein are legal conclusions to which no responsive pleading is required. To the extent a response is required, FII denies each and every allegation contained therein.

- In response to Paragraph 15 of the Complaint, the allegations contained therein are legal conclusions to which no responsive pleading is required. To the extent a response is required, FII denies each and every allegation contained therein.
- In response to Paragraph 16 of the Complaint, FII is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein, and on that basis denies each and every allegation therein.

## SECOND CAUSE OF ACTION

(Declaratory Relief)

- In response to Paragraph 17 of the Complaint, the statement in Paragraph 17 requires no responsive pleading. To the extent a response is required, FII incorporates by reference its responses to Paragraphs 1 through 16 of the Complaint.
- In response to Paragraph 18 of the Complaint, the allegations contained therein are legal conclusions to which no responsive pleading is required. To the extent a response is required, FII denies each and every allegation contained therein.
- In response to Paragraph 19 of the Complaint, the allegations contained therein are legal conclusions to which no responsive pleading is required. To the extent a response is required, FII denies each and every allegation contained therein.
- In response to Paragraph 20 of the Complaint, the allegations contained therein are legal conclusions to which no responsive pleading is required. To the extent a response is required, FII denies each and every allegation contained therein.

## **AFFIRMATIVE DEFENSES**

### First Affirmative Defense

(Failure to State a Claim)

The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

(Unclean Hands)

The Complaint is barred by the doctrine of unclean hands.

<u>Third Affirmative Defense</u>

(Estoppel)

The Complaint is barred by the doctrine of estoppel.

**COUNTERCLAIM**

**GENERAL ALLEGATIONS**

1. On or about November 12, 2001, FII and Gilbert entered into a Franchise Agreement, which granted Gilbert the right to operate a FASTSIGNS sign, graphics, and banner Center under the FII trademark, service mark, and trade name in Redwood City, California.

2. The Franchise Agreement also requires Gilbert to make certain payments to FII including, but not limited to, a continuing service fee based on a percentage of gross sales from Gilbert's Center. Gross sales include all revenues from the sale of any and all services and products by the franchisee from the Center, and all other revenues related to the operation of the Center.

3. On or about April 2008, FII conducted an audit of Gilbert's business and discovered that he had failed to report a significant sale of over $160,000 at his Center.

4. On or about May 1, 2008, Gilbert admitted to FII that he tried to avoid reporting the sale and payment of royalties. Gilbert then failed to comply with FII's requirements for resolving these issues by refusing to pay the amounts due and owing to FII for the outstanding royalty payments and audit fees.

5. On or about May 27, 2008, FII provided Gilbert notice of termination of the franchise Agreement pursuant to its default and termination provisions effective June 9, 2008. FII also agreed to extend the termination date by 90 days if Gilbert agreed to sell his franchise.

6. Gilbert rejected FII's offer and filed a complaint and application for temporary restraining order and preliminary injunction in the Superior Court of San Mateo County, California, which was subsequently removed by FII to this Court.

## COUNT 1

(Injunctive Relief)

7. FII incorporates by reference the allegations contained in paragraphs 1 through 6 above as though fully set forth herein.

8. During the term of the Franchise Agreement, Gilbert intentionally failed to perform his obligations under the agreement by failing to report all sales. FII repeatedly notified Gilbert of his failure. However, Gilbert failed to cure his default.

9. As a result, FII notified Gilbert that it was terminating the Franchise Agreement effective June 9, 2008.

10. Gilbert has failed to abide by FII's termination of the Franchise Agreement and has failed to abide by his post-termination duties under the agreement. Specifically, Gilbert has committed, and continues to commit, the following acts in direct violation of the Franchise Agreement and his common law and statutory obligations:

- Gilbert is unlawfully operating the Center using the FASTSIGNS name, its marks, its trade dress and the devices associated with the FASTSIGNS system, thereby holding himself out as a present franchisee of FII and falsely representing to the public that he is still affiliated with the valuable FASTSIGNS name;

- Gilbert has failed and refused to pay all amounts that are due and owing under the Franchise Agreement;

- Gilbert has failed and refused to cancel or furnish FII with evidence that he has canceled any assumed name or equivalent registration which contains the mark FASTSIGNS or any other trademark or service mark of FII;

- Gilbert has failed and refused to return all FII documents and electronic information including, but not limited to, the Point of Sale Database, customer lists, instructions, operating manuals and display items; and

- Gilbert has failed and refused to assign the Center's telephone number to FII, and are still using the Center's telephone number to conduct his sign, graphics and banner business.

11. Section 17 of the Franchise Agreement requires Gilbert do the following upon

termination of the agreement:

    (A)   . . . [I]mmediately and permanently cease to use in any manner whatsoever any equipment, methods, procedures and techniques associated with the System, the name FASTSIGNS and all Proprietary Marks and distinctive trade dress and devices associated with the System, and Franchisee shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former franchisee of Franchisor. . . .

    (B)   . . . [C]ancel any assumed name or equivalent registration which contains the mark FASTSIGNS or any other trademark or service mark of Franchisor, and Franchisee shall furnish Franchisor with evidence satisfactory to Franchisor of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

    (D)   . . . [D]eliver to Franchisor all manuals, including the Manuals, records, files . . ., customer lists, point-of-sale databases, instructions, correspondence, and any and all other materials relating to the System and the operation of the business franchised hereunder in Franchisee's possession, and all copies thereof (all of which are acknowledged to be Franchisor's property) . . . .

    (E)   . . . [A]ssign to Franchisor all rights to the telephone number for the Center . . . and execute all forms and documents required . . . to transfer such service and numbers to Franchisor.

By failing to abide by these post-termination duties, Gilbert is continuing to trade on FASTSIGNS' valuable name and to unlawfully benefit from his previous association with FII. This unlawful action constitutes a breach of the Franchise Agreement and is causing irreparable harm to FII. Gilbert must be required to abide by his post-termination duties.

    12.   Gilbert's unauthorized use of the FII Marks have likely caused the public to believe, erroneously, that Gilbert's Center was affiliated with FII. Also, it likely diverted to Gilbert the benefit of the reputation and goodwill associated with FII's name and marks and/or damaged the reputation and goodwill associated with FII's name.

    13.   Gilbert's actions complained of herein were at all times without FII's consent. Gilbert's actions constitute infringement of the FII Marks in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

14. FII has no adequate remedy at law and, thus, will be irreparably harmed if this activity is allowed to continue.

15. Therefore, FII seeks a preliminary injunction and, after arbitration on the merits, a permanent injunction enjoining this wrongful conduct. Specifically, FII respectfully requests that injunctive relief be granted requiring Gilbert to immediately cease operating a sign, graphics and banner business at the Center's location or within the Center's Territory. Further, FII requests that Gilbert be required to abide by all post-termination obligations including, but not limited to, the following: (a) immediately cease using any equipment, methods, procedures and techniques associated with FII, the name FASTSIGNS and all Proprietary Marks and distinctive trade dress and devices; (b) immediately cease holding himself out as a present or former franchisee of FII; (c) immediately cease using or possessing any assumed name registration which contains the mark FASTSIGNS or any other trademark or service mark of FII; (d) immediately deliver to FII all documents, electronic files, the Point of Sale database, and other materials relating to the operation of the Center; and (e) immediately assign all rights to the Center's telephone number to FII.

## **COUNT 2**

(Declaratory Relief)

16. FII incorporates by reference the allegations contained in paragraphs 1 through 15 above as though fully set forth herein.

17. An actual controversy has arisen and now exists between FII and Gilbert concerning their respective rights and duties pursuant to the Franchise Agreement and under law.

18. Section 16.B (14) of the Franchise Agreement provides that FII may immediately terminate the Agreement if the franchisee "fails, refuses, or neglects to promptly pay any monetary obligation owing to Franchisor . . . when due, or to submit the financial or other information required by Franchisor under this Agreement, and does not cure such default within ten (10) days following notice thereof from Franchisor."

19. Section 16.B. (15) of the Franchise Agreement provides that FII may immediately terminate the Agreement if the franchisee "is in default with respect to the payment of any

1  monetary obligation due to Franchisor hereunder more than two (2) times during any immediately
2  preceding twelve (12) month period of time, whether or not cured by Franchisee after notice by
3  Franchisor."

4  　　　20.　　Gilbert failed to pay amounts due and owing to FII pursuant to the Franchise
5  Agreement and refused to pay these amounts despite written notice by FII.

6  　　　21.　　Based on Gilbert's failures to make payments required by the Franchise
7  Agreement and subsequent refusal to cure those failures, FII was entitled to terminate the
8  Franchise Agreement.

9  　　　22.　　FII is entitled to a declaration that FII legally and permissibly terminated the
10 Franchise Agreement pursuant to Section 16.B. (14) and (15).

## PRAYER FOR RELIEF

WHEREFORE, FII requests the following:

A.　　A preliminary and permanent injunction be issued, that Gilbert, his agents, servants, employees and all persons acting in concert or participation therewith:

　　　1)　　refrain from using and disclosing FII's confidential and proprietary information;

　　　2)　　cease using any equipment, methods, procedures and techniques associated with FII, the name "FASTSIGNS" and all Proprietary Marks and distinctive trade dress and devices;

　　　3)　　cease holding himself out as a present or former franchisee of FII or as having any relationship with FII whatsoever;

　　　4)　　cease using or possessing any assumed name registration which contains the mark FASTSIGNS or any other trademark or service mark of FII;

　　　5)　　immediately return all of FII's documents and information including, but not limited to, its Manuals, records, instructions, correspondence, and customer lists,

　　　6)　　immediately return all electronic files including, but not limited to the Point of Sale database, through a net meeting with FII's technology people or

1  another appropriate manner, as prescribed by FII; and

2      7) immediately assign all rights to the Store's telephone number to

3  FASTSIGNS International, Inc.

4  during the pendency of this action;

5  B. An order declaring that FII legally and permissibly terminated the Franchise

6  Agreement;

7  C. For costs of suit; and

8  D. For such other relief as the Court may deem just and proper.

10  Dated: August 7, 2008            DLA Piper US LLP

13  By /s/ Jeffrey M. Hamerling
    Jeffrey M. Hamerling
    Erin Frazor
    Attorneys for Defendant
    FASTSIGNS INTERNATIONAL, INC.