JEFFREY M. HAMERLING (Bar No. 91532)
ERIN FRAZOR (Bar No. 251324)
DLA PIPER US LLP
153 Townsend Street, Suite 800
San Francisco, CA 94107-1957
Tel: 415.836.2500
Fax: 415.836.2501

Attorneys for Defendant
FASTSIGNS INTERNATIONAL, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NORMAN GILBERT,<br><br>       Plaintiff,<br><br>   v.<br><br>FASTSIGNS INTERNATIONAL, INC. and DOES 1-20, inclusive,<br><br>       Defendants. | Case No. CV 08-03043 VRW<br><br>**STIPULATION FOR ENTRY OF JUDGMENT** |
| FASTSIGNS INTERNATIONAL, INC., a Texas corporation,<br><br>       Counterclaimant,<br><br>   v.<br><br>NORMAN GILBERT,<br><br>       Counterdefendant. | |

DLA PIPER US LLP
LOS ANGELES

WEST\21487477.2

IT IS HEREBY STIPULATED AND AGREED by and between Plaintiff NORMAN GILBERT ("Gilbert"), and Defendant FASTSIGNS INTERNATIONAL, INC. ("FII") that:

1. On or about November 12, 2001, Gilbert and FII entered into a written franchise agreement ("Franchise Agreement"), whereby FII granted Gilbert a franchise to operate an authorized FastSigns store located at 2504 El Camino Real, Redwood City, California 94061 (the "Store"). Gilbert assigned the Franchise Agreement to a corporation that he controls named Mid-Peninsula Marquee, Inc. ("Mid-Peninsula"). As a condition to FII's consent to the assignment, among other conditions, Gilbert agreed to personally and unconditionally guarantee each and every undertaking, agreement and covenant set forth in the Franchise Agreement and to be personally bound by and personally liable for the breach of any provision of the Franchise Agreement. Gilbert enters into this Stipulated Judgment on his behalf and on behalf of Mid-Peninsula, which shall be bound by the terms of this Stipulated Judgment.

2. Gilbert defaulted under the Franchise Agreement by failing to report all sales and failing to pay royalty payments. By letter dated May 27, 2008, FII gave notice to Gilbert of the termination of the Franchise Agreement effective June 9, 2008.

3. On or about June 11, 2008, Gilbert filed a lawsuit in the Superior Court for San Mateo County against FII seeking a temporary restraining order and preliminary injunction pending arbitration of FII's termination of the Franchise Agreement (the "State Court Lawsuit"). FII removed the State Court Lawsuit to the United States District Court for the Northern District of California (the "Court") and filed certain counterclaims against Gilbert (the claims and counterclaims are hereinafter referred to as "the Lawsuit").

4. After obtaining counsel and having received advice of counsel, Gilbert agrees that it is in his best interest to avoid the burden and expense of litigation concerning the above issues and hereby stipulates to a judgment in the form and substance as set forth herein and in the Judgment Pursuant to Stipulation attached hereto as Exhibit A ("Stipulated Judgment").

5. Prior to February 6, 2009, Gilbert shall have the right to designate and request FII's approval of a qualified transferee pursuant to Section 18 of the Franchise Agreement (a "Qualified Buyer") and enter into a purchase and sale agreement with such Qualified Buyer, the

WEST\21487477.2

-1-

closing of which shall occur within thirty (30) days of FII's approval, but in no event later than March 7, 2009. Within seven (7) days of the proposed transferee interviewing at FII's headquarters and Gilbert presenting FII with a complete application and all supporting documents that FII requires of any proposed transferee of a franchise, FII shall notify Gilbert whether FII approves or disapproves the proposed transferee. FII shall not withhold approval of a proposed transferee unreasonably and shall comply with all terms of the Franchise Agreement in approving or disapproving a proposed buyer. For clarity, a Qualified Buyer shall not include any relative of Gilbert, any entity in which Gilbert has a direct or indirect ownership interest or with which Gilbert has any management role. Any dispute between FII and Gilbert on whether FII unreasonably withheld approval of a proposed transferee shall be determined by the Court on an expedited basis. The parties hereto agree that a Magistrate Judge may decide any such issues.

6. For the period commencing now and ending on the earlier of: a) the date of the closing of the transfer of the Franchise Agreement to a Qualified Buyer, or b) February 6, 2009, if Gilbert has not proposed a Qualified Buyer as of that date ("Provisional Possession Period"), Gilbert shall have the right to operate the Store and use the FII trade names, service marks, logos, trade dress, and other commercial symbols, including, without limitation, the "FASTSIGNS" trade name and service mark (collectively, "FII Marks") in conjunction with the Store in accordance with the terms and conditions of the Franchise Agreement, provided that Gilbert abides by all terms of the Franchise Agreement, including payment of royalties and fees. If Gilbert obtains FII's approval of a Qualified Buyer between January 7, 2009 and February 6, 2009, the Provisional Possession Period may be extended for thirty (30) days from the date of FII's approval to allow escrow to close. However, any breach of the terms of this Stipulation shall immediately terminate the Provisional Possession Period, which shall allow FII, at its option to obtain possession of the Store pursuant to the Franchise Agreement or exercise its option to buy under Paragraph 12.

7. Gilbert shall pay FII the sum of Nine Thousand Twenty-Nine Dollars and Seventy-Eight Cents ($9,029.78) on or before August 30, 2008.

8. Upon any transfer of the Franchise Agreement to a Qualified Buyer, Gilbert shall cause to be paid to FII an amount equal to the following:

| If closing occurs | Amount |
| --- | --- |
| On or before November 6, 2008 | $0 |
| On or after November 7, 2008 and on or before December 6, 2008 | $8,000 |
| On or after December 7, 2008 and on or before January 6, 2009 | $16,000 |
| On or after January 7, 2009 and and on or before February 6, 2009 | $24,000 |

9. Gilbert may cause said amounts to be paid out of escrow if Gilbert opens escrow to transfer the Franchise Agreement to an approved Qualified Buyer prior to February 6, 2009. In the event that Gilbert does not propose a Qualified Buyer prior to February 6, 2009, or escrow fails to close prior to March 7, 2009, Gilbert shall pay FII the sum of $24,000, subject to the offset provided in Paragraph 12 below, if FII exercises its option to purchase the Store.

10. As a condition to transfer of the Franchise Agreement to a Qualified Buyer, Gilbert shall cause to be paid to FII, upon execution of the new Franchise Agreement by the Qualified Buyer, a transfer fee as provided in Section 18(B) of the Franchise Agreement and comply with all other provisions in Section 18. However, no transfer fee shall be owed if Gilbert transfers the Store to FII, pursuant to Paragraph 12 of this Stipulation.

11. Gilbert shall never seek or obtain an ownership interest or be affiliated in any manner with any FII franchisee. However, Gilbert may respond to questions from a Qualified Buyer about the Store for thirty (30) days after the Qualified Buyer purchases the Store.

12. In the event that Gilbert does not propose a Qualified Buyer prior to February 7, 2009 or close escrow within 30 days thereafter, FII shall have the option, within fifteen (15) days thereafter of either date, to purchase all right, title and interest of Gilbert in, under and relating to the Franchise Agreement and the Store on the following terms and conditions:

- FII shall pay Gilbert an amount equal to the amount that Gilbert owes FII pursuant to Paragraph 9 above, resulting in a net payment of $0.00 by either party.
- Gilbert and FII shall enter into a non-competition agreement providing that Gilbert or any entity in which Gilbert has any ownership or management interest shall not for a period of two (2) years compete with FII or any of its franchisees within sixty (60) miles of any store operated by FII or a franchisee of FII and shall not recruit or solicit any employee of any FII franchisee to leave his or her employment with another franchisee.
- At FII's request, Gilbert shall transfer to FII all rights to the telephone numbers for the Store and any or all related business listings as set forth in Section 17(E) of the Franchise Agreement. Nothing herein requires FII to obtain any particular listing.
- FII shall have the option as set forth in Section 17(G) of the Franchise Agreement to purchase any or all of the inventory and equipment used by Gilbert at the Store (the "Equipment"). Gilbert shall maintain the Equipment in good working order, subject to reasonable wear and tear, through the date of any transfer to FII pursuant to this Paragraph 12.
- FII shall exercise its option as set forth in Section 17(F) of the Franchise Agreement to assume the lease for the premises at which the Store is located (the "Lease") and upon exercise of such option Gilbert shall take all reasonable steps to assign such Lease and obtain the consent of the landlord thereto, as provided in the Addendum to Lease dated February 2, 2002 between Gilbert and landlord.
- Notwithstanding specific references to the provisions of Section 17 of the Franchise Agreement, the other provisions of Section 17 of the Franchise Agreement shall remain in effect upon a transfer from Gilbert to FII of Gilbert's right, title and interest in, under and to the Franchise Agreement and/or the Store.
- Upon transfer by Gilbert of his right, title and interest in the Franchise Agreement, Gilbert shall cease to use any and all FII Marks or items containing or referring to the FII Marks.

13. Prior to the close of business on August 7, 2008: (a) Gilbert shall resign in writing from FII's Franchise Advisory Committee and (b) Gilbert shall cancel the domain name www.fastsignsofredwoodcity.com and related website and the email address sales@fastsignsofredwoodcity.com and confirm such cancellations to FII. In addition, Gilbert shall assign all of his right, title and interest in such domain name, website and email address to FII.

14. Gilbert and FII shall present the terms of this Stipulation for Entry of Judgment on the record before the District Court in the above-captioned matter on or before the hearing on August 7, 2008.

15. Gilbert and FII hereby each agree not to disparage in any manner, verbally or in writing (e.g., find fault with, degrade, criticize, belittle, mock, ridicule, vilify, make fun of, or denigrate), the other party (including with respect to FII, its agents, officers, employees, directors, and shareholders) such that to a reasonable person such denigration is likely to adversely impact the goodwill or reputation in the community of the other party.

16. (a) Gilbert and each of its affiliates and their successors and assigns (the "Gilbert Parties") hereby release FII, its agents, officers, employees, directors, shareholders, affiliates, successors and assigns (the "FII Parties") from any and all manner of claims related to statutory violations, breach of contract, debt, liability, and tort, that the Gilbert Parties had, have, or may have through the date of this Agreement arising from or related to any action or inaction by the FII Parties prior to the date hereof, including, without limitation, any and all facts or allegations which could give rise to a claim or cause of action, excepting only the FII Parties' obligations under this Agreement. Each of the Gilbert Parties represents and warrants that it has not assigned or otherwise transferred any claim or cause of action released by this Section.

(b) The FII Parties hereby release the Gilbert Parties and each of them, of and from any and all manner of claims related to statutory violations, breach of contract, debt, liability, and tort that the FII Parties had, have, or may have through the date of this Agreement arising from or related to any action or inaction by the Gilbert Parties prior to the date hereof, including, without limitation, any and all facts or allegations which could give rise to a claim or cause of action,

excepting only the Gilbert Parties' obligations under this Agreement. Each of the FII Parties warrants and represents that it has not assigned or otherwise transferred any claim or cause of action released by this Section.

(c) Each of the parties understands and agrees that in the event any injury, loss or damage has been sustained by it or him, which is not now known or suspected, or in the event that the loss or damage now known has consequences or results not known or suspected, this Agreement shall nevertheless constitute a full and final release as to the parties herein released and shall apply to and include all unknown and unsuspected consequences and results. It is expressly understood and agreed that each of the parties has been advised of the provisions of California Civil Code Section 1542, which reads as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Each of the parties waives all rights and benefits which it now has, or in the future may have, under and by virtue of the provisions of Civil Code Section 1542, as well as the provisions of any comparable law of any applicable jurisdiction, with the purpose and intent that the release contained in this Agreement shall be construed as a general, unqualified release pursuant to the terms hereof, except as qualified in (a) and (b) of this Section. The parties acknowledge and agree that this waiver is an essential and material term of this Agreement, without which the consideration relating hereto would not have been delivered.

17. The parties agree hereto that this document may be executed in counterparts and shall become effective when each party has executed at least one counterpart, and that a signature transmitted by facsimile or PDF shall be treated as an original ink signature for all purposes.

18. This Stipulation for Entry of Judgment shall be binding and inure to the benefit of the successors, assigns, heirs, devisees, executors, partners, officers, directors, shareholders, employees, affiliates, representatives, insurers, managers, and attorneys of the parties. Gilbert expressly waives the right to challenge this Stipulation for Entry of Judgment on any grounds whatsoever.

19. The Court shall retain jurisdiction to enforce the terms of this Stipulation for Entry of Judgment to and until June 30, 2009. In the event that the Court does not enter judgment pursuant to this stipulation and prior to entry of judgment, this stipulation shall be deemed a settlement agreement between the parties that is fully binding and enforceable by a California federal or state court of competent jurisdiction and the parties waive any rights to arbitration. The prevailing party in any action to enforce the terms of this stipulation shall be entitled to reasonable attorneys' fees.

FASTSIGNS INTERNATIONAL, INC.,
a Texas corporation

By: _____
Name: Larry Lane
Its: President

Dated: August 7, 2008

NORMAN GILBERT,
an individual and on behalf of Mid-Peninsula Marquee Inc.

By: _____

Dated: _____, 2008

19. The Court shall retain jurisdiction to enforce the terms of this Stipulation for Entry of Judgment to and until June 30, 2009. In the event that the Court does not enter judgment pursuant to this stipulation and prior to entry of judgment, this stipulation shall be deemed a settlement agreement between the parties that is fully binding and enforceable by a California federal or state court of competent jurisdiction and the parties waive any rights to arbitration. The prevailing party in any action to enforce the terms of this stipulation shall be entitled to reasonable attorneys' fees.

FASTSIGNS INTERNATIONAL, INC.,
a Texas corporation

By: _____
Name:  Larry Lane
Its:  President

Dated: _____, 2008

NORMAN GILBERT,
an individual and on behalf of Mid-Peninsula Marquee Inc.

By: *[signature: Norman Gilbert]*

Dated:  8/7, 2008

1

*Approved as to form:*

2

3

By: _____
Jeffrey M. Hamerling
Attorneys for Defendant
FASTSIGNS INERNATIONAL, INC.,

By: _____
Douglas Dal Cielo
Attorneys for Plaintiff,
NORMAN GILBERT and Mid-Peninsula
Marquee Inc.

Dated: 8/7, 2008

Dated: 8/7, 2008

# EXHIBIT A

| | |
|---|---|
| 1 | JEFFREY M. HAMERLING (Bar No. 91532) |
|   | ERIN FRAZOR (Bar No. 251324) |
| 2 | DLA PIPER US LLP |
|   | 153 Townsend Street, Suite 800 |
| 3 | San Francisco, CA 94107-1957 |
|   | Tel: 415.836.2500 |
| 4 | Fax: 415.836.2501 |
| 5 | Attorneys for Defendant |
|   | FASTSIGNS INTERNATIONAL, INC. |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| NORMAN GILBERT, | Case No. CV 08-03043 VRW |
| Plaintiff, | **[PROPOSED] JUDGMENT PURSUANT TO STIPULATION** |
| v. | |
| FASTSIGNS INTERNATIONAL, INC. and DOES 1-20, inclusive, | |
| Defendants. | |
| FASTSIGNS INTERNATIONAL, INC., a Texas corporation, | |
| Counterclaimant, | |
| v. | |
| NORMAN GILBERT, | |
| Counterdefendant. | |

DLA PIPER US LLP
LOS ANGELES

WEST\21487554.1

[PROPOSED] JUDGMENT PURSUANT TO STIPULATION

Pursuant to the stipulation of the parties and good cause appearing:

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that judgment is granted for FASTSIGNS INTERNATIONAL, INC. ("FII") on its counterclaim for declaratory relief. Norman Gilbert's Franchise Agreement with FII was legally terminated by FII. Gilbert may, however, continue to use the FII Marks and operate the Store provisionally pursuant to the Stipulation for Entry of Judgment, which is incorporated herein as part of this Judgment. All other claims and counterclaims are dismissed. The Court shall retain jurisdiction to enforce the terms of the Stipulation to and until June 30, 2009. Each party shall bear its own costs and attorneys' fees in connection with this action.

**IT IS SO ORDERED.**

Dated: _____

UNITED STATES DISTRICT COURT JUDGE

*Approved as to form:*

By: _____
Douglas DalCielo
Attorneys for Plaintiff,
NORMAN GILBERT and Mid-Peninsula Marquee Inc.

Dated: ___8/7___, 2008